*Decision will be entered for the respondent.*

CLARION OIL CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 101596, 103663. Promulgated March 11, 1943.

*J. L. Lockett, Esq.*, for the petitioner.
*Frank B. Schlosser, Esq.*, for the respondent.

OPINION.

KERN, *Judge:* These proceedings, consolidated for hearing, involve deficiencies in petitioner's income tax and personal holding company surtax and penalty as follows:

| Year | Docket No. | Income tax | Personal holding company surtax | Penalty |
|---|---|---|---|---|
| 1937 | 101596 | | $35,000.44 | $8,750.11 |
| 1938 | 103663 | $6,375.19 | 14,946.90 | |

The questions in issue are:

(1) Whether petitioner was a personal holding company in 1937; or, more specifically, whether an amount of $120,000 which petitioner received in that year as a cash payment in consideration for the assignment of an oil and gas lease was personal holding company income within the meaning of section 353 of the Revenue Act of 1936 (added by section 1 of the Revenue Act of 1937), and, if so, whether petitioner is liable for the statutory 25 percent delinquency penalty for failure to file a personal holding company return for 1937.

(2) Whether, in computing petitioner's personal holding company surtax liability, if any, for 1937, the amounts of its normal and excess profits taxes for that year are deductible.

(3) Whether the statutory percentage depletion deduction which the petitioner took in 1937, amounting to $33,000, on the $120,000 received in that year for assignment of the lease is includible in computing petitioner's income tax and personal holding company surtax for 1938 when the lease proved unproductive and was abandoned by the assignee.

(4) Whether if the petitioner is held liable for the personal holding company surtax and penalty for 1937, as determined by the respondent, the provisions of the statute under which such tax and penalty are imposed are unconstitutional.

The proceedings were submitted on the following stipulation of facts:

1. Petitioner is a corporation created under the laws of Texas in 1911, and now having a capital stock of $200,000 since the seventh day of July, 1931, when its capital stock was reduced from $1,000,000. Its office is at Houston, Texas. It filed its income tax returns for 1937 and 1938 with the collector at Austin. Originally incorporated by two brothers who were practical oil men and drillers, both now deceased, the entire capital stock of the corporation passed to their respective families, and during 1937 and 1938 more than 50 percent in value of its outstanding stock was owned by or for not more than five individuals within the meaning of Section 352 (a) (2) of the Revenue Act of 1936, as amended, and of section 402 of the Revenue Act of 1938.

2. Article II of petitioner's charter reads as follows:

"The purpose for which it is formed is the establishment and maintenance of an oil company with authority to contract for the lease and purchase of the

right to prospect for, develop and use coal and other minerals and petroleum; also the right to erect, build and own all necessary oil tanks, cars and pipes necessary for the operation of the business of the same."

3. Prior to 1937, to wit, on or about the twenty-ninth day of November, 1933, petitioner acquired by assignment for the cost of $1.00, an undivided three fourths of the lessee's (or working) interest in an oil, gas and mineral lease dated April 6, 1933, from Frank E. Gavin, et al., as lessors, to Arthur Mandell, Jr., as lessee, covering all of the A. M. Gentry Survey containing 320 acres, more or less, in Harris County, Texas. Said lease provided for a royalty of one-eighth of oil, gas and casinghead gas produced and also provided for maintaining the lease in force for a series of twelve months periods aggregating five years from November 30, 1933, by the payment on or before the beginning of such respective periods of a cash rental of $640.00. Under its terms the lease was to lapse on November 30, 1938, unless oil, gas or minerals were at said date being produced from the said land, or drilling operations were actually in progress thereon. No drilling or work for the production of oil, gas or other minerals had been done on said land under said lease on July 3, 1937. On that date petitioner and the other owners of the lessee's interest under said lease assigned the same in writing to Humble Oil & Refining Company for the consideration of the sum of $160,000.00 cash paid (three fourths of which consideration, $120,000.00, was received by petitioner in 1937), and in further consideration of (a) an overriding royalty of one twenty-fourth of and from production from the land, and (b) a further payment out of production until the aggregate thereof shall equal $320,000.00.

4. Shortly after acquiring said lease Humble Oil & Refining Company drilled a well thereon but failed to obtain production of mineral and about the middle of 1938 the well was abandoned as a nonproducing well. No further development was prosecuted for oil, gas, or any other mineral; the land was definitely recognized as condemned for purposes of the lease and the lease was finally abandoned by Humble Oil & Refining Company prior to November 30, 1938. No drilling or development work was in progress on November 30, 1938, therefore, the lease by its own terms expired on that date.

5. In petitioner's income and excess-profits tax return for 1937 (Form 1120) there was included as taxable income the sum of $120,000.00 received by it for the above mentioned assignment of lease and in respect of said amount a deduction for depletion was taken in the sum of $33,000.00, the return showing specifically and particularly the receipt of said sum of $120,000 as consideration for said assignment of said lease and showing separately and particularly the depletion deduction of $33,000.00. Said depletion deduction has been allowed by respondent.

6. In computing the deficiency for 1937 involved in Docket No. 101,596, respondent has treated said $120,000.00 as "personal holding company income" within the meaning of Section 353 of the Revenue Act of 1936, as amended. Respondent has also recognized the other items of gross income of petitioner for 1937, to wit:

| | |
|---|---|
| Dividends and interest | $ 75,155.38 |
| Rents | 1,335.56 |
| Oil royalties | 52,160.71 |
| Total | $128,651.65 |

The total deductions allowable to petitioner for 1937 under Section 23 (a) (relating to expenses) other than compensation for personal services rendered by shareholders is $4,473.61.

7. In the computation of the deficiency for the year 1938 involved in Docket No. 103,663, respondent has included as taxable income and as "personal holding company income" to petitioner in said year the sum of $33,000.00 being the amount of the depletion deduction allowed for 1937 in respect of the above mentioned $120,000.00 bonus received by petitioner in 1937 for the assignment of the aforesaid mineral lease. Said sum of $33,000.00 was not included in petitioner's return for 1938 as taxable income.

8. Petitioner's officers in preparing the corporation's return for 1937 had no thought that the above mentioned $120,000.00 would be considered "personal holding company income," or that the corporation could be classified as a "personal holding company" under Title IA of the Revenue Act of 1936, as amended, and did not file a personal holding company return, (Form 1120H) for 1937. On the corporation's income and excess-profits tax return (Form 1120) the answer "No" was given to the question, "5. Is the corporation a personal holding company within the meaning of Section 351 of the Revenue Act of 1936 as amended by the Revenue Act of 1937?"

9. The petitioner was not a "personal holding company" in any year prior to 1937.

10. For the year 1937 the amount of petitioner's net income for income tax, as shown by its return and as computed by respondent is $162,386.45, of which $68,580.00 is the amount of dividends received. Normal tax of $14,454.02 and excess-profits tax of $1,448.80, in respect of 1937 income were shown by petitioner's return and paid on March 10, 1938. In 1937 petitioner paid $452.53 additional income tax in respect of its income for 1936. During 1937, petitioner paid and distributed dividends to its shareholders in the aggregate sum of $115,000.00 in cash, out of earnings or profits accumulated since February 28, 1913.

11. In computation of the personal holding company surtax, for 1937, respondent has deducted from adjusted net income, $115,000.00 as a dividends paid credit and $452.53 for 1936 income tax paid in 1937, but has not made any deduction for the normal tax or for the excess-profits tax referred to in paragraph 10, above.

12. Petitioner's income tax returns for 1937 and 1938 were made on the basis of actual receipts and disbursements.

13. The petitioner's tax returns for 1937 and 1938 were filed with the collector of internal revenue for the Austin, Texas, district.

1. Our first question is whether the $120,000 cash bonus which the petitioner received in 1937 as a part of the consideration for the assignment of its three-fourths interest in the lease to the Humble Oil & Refining Co. was personal holding company income within the meaning of section 353 of the Revenue Act of 1936 (added by section 1 of the Revenue Act of 1937).

The stipulated facts show that more than 50 percent in value of the petitioner's outstanding stock was owned during the taxable years 1937 and 1938 by or for not more than five individuals, within the meaning of section 352 (a) (2) of the Revenue Act of 1936, as amended, and of section 402 of the Revenue Act of 1938. The requirements of the statute as to stockholdings for a personal holding corporation are admittedly present.

Section 352 of the Revenue Act of 1936 (added by section 1 of the Revenue Act of 1937), gives as the gross income requirement of a

personal holding company that at least 80 percent of its gross income for the taxable year must be personal holding income within the definition of section 353 of the Revenue Act of 1936, likewise added by section 1 of the Revenue Act of 1937. The petitioner's gross income for 1937 consisted of the following:

| | |
|---|---:|
| Dividends and interest | $75, 155. 38 |
| Rents | 1, 335. 56 |
| Oil royalties | 52, 160. 71 |
| Cash bonus | 120, 000. 00 |
| Total | 248, 651. 65 |

The adjusted net income has been found by the respondent to be $161,933.92.

It is the contention of the petitioner that the $120,000 cash bonus was not personal holding company income within the meaning of section 353. It is manifest that if it was not, then less than 80 percent of its gross income for 1937 was personal holding company income. The petitioner admits that the entire amount of $120,000 was taxable income of 1937. It returned it as such.

It is further plain that if the $120,000 cash bonus is to be included in personal holding company income for 1937 as royalties the petitioner is liable to personal holding company surtax for 1939, since the deductions allowable under section 23 (a) (relating to expenses) other than compensation for personal services rendered by shareholders constitute less than 15 percent of the gross income.

Our only question for decision upon this issue is whether the $120,000 cash bonus constitutes personal holding company income for 1937.

Section 353 of the Revenue Act of 1936 (added by section 1 of the Revenue Act of 1937) reads in part as follows:

SEC. 353. PERSONAL HOLDING COMPANY INCOME.

For the purpose of this title the term "personal holding company income" means the portion of the gross income which consists of:

\* \* \* \* \* \* \*

(g) RENTS.—Rents, unless constituting 50 per centum or more of the gross income. For the purposes of this subsection the term "rents" means compensation, however designated, for the use of, or right to use, property; but does not include amounts constituting personal holding company income under subsection (f).

(h) MINERAL, OIL, OR GAS ROYALTIES.—Mineral, oil, or gas royalties, unless (1) constituting 50 per centum or more of the gross income, and (2) the deductions allowable under section 23 (a) (relating to .expenses) other than compensation for personal services rendered by shareholders, constitute 15 per centum or more of the gross income.

The respondent contends that the $120,000 cash bonus is personal holding company income of the petitioner for 1937 either as "rents" under section 353 (g) or as "royalties" under section 353 (h). If it is

to be considered "rents," then the total amount of the rents, namely, $120,000 plus $1,335.56, is less than 50 percent of the gross income. Therefore whether considered to be "rents" or to be "royalties" the petitioner is liable to personal holding company income surtax for 1937.

The petitioner contends that the cash bonus of $120,000 can not properly be regarded as rents. We agree with this contention. "Rent" is the payment made for the use or possession of property to the owner of the property or of a leasehold interest therein, the term of which is greater than the term of the sublease. Tiffany on Real Property (3d Ed.) § 123. In this case petitioner assigned all of its "interest under said lease" to the Humble Oil Co. If the transaction had consisted solely of petitioner's assignment of its entire leasehold interest in return for a payment of $120,000, we would have no hesitancy in concluding that the payment received represented purchase price and not rent. Under the facts here present, which show a retention by the assignor of an overriding royalty interest, the payment of $120,000 received by the petitioner may not properly be termed a payment of purchase price, *Commissioner* v. *Fleming*, 82 Fed. (2d) 324, but we are still of the opinion that it was not rent. It was "not paid for time but for oil and gas" to be taken out, and was "in the nature of" "and" "to be regarded as" advance royalty. *Anderson* v. *Helvering*, 310 U. S. 404. It was not a payment for the use of property, and under the laws of Texas it can not be considered as rent. *Commissioner* v. *Wilson*, 76 Fed. (2d) 766.

However, while such a payment has been held for purposes of depletion to be "in the nature of" and "to be regarded as" advance royalty, it is not in fact and in law a royalty. In the instant case we are not interested in how the payment should be treated, but in what it is, for our question is whether the payment here involved constituted "royalties" within the meaning of section 353 (h), which imposes a harsh tax, see *United Business Corporation of America*, 19 B. T. A. 809, 826, and not whether for certain purposes it should be treated "as if" it were a royalty. See *United Shipyards, Inc.* v. *Hoey*, 131 Fed. (2d) 525. For the reasons stated by us in *Porter Property Trustees, Ltd.*, 42 B. T. A. 681, 691, we still conclude that "a bonus payable * * * in a definite sum and in no way contingent upon or payable from the production of oil or gas from the leased property is not a 'royalty'" within the meaning of section 353 (h). Nothing in the cases cited by respondent impels us to change our conception of the law as therein stated.

It therefore follows that petitioner is not a personal holding company within the meaning of the statute, and is not subject to penalty

for failure to file a personal holding company return on Form 1120 H for the year 1937.

The cases which deal with the question of whether a bonus payment such as the one here involved is subject to depletion are not in point in considering the narrow question here presented. Such cases are *Cullen* v. *Commissioner*, 118 Fed. (2d) 651; *Commissioner* v. *West Production Co.*, 121 Fed. (2d) 9; and *Anderson* ·v. *Helvering*, 310 U. S. 404. These cases stem from the case of *Palmer* v. *Bender*, 287 U. S. 551, in which the taxpayer assigned certain leasehold interests in oil producing land and received in partial consideration therefor a bonus payment. The question presented was whether the taxpayer was entitled to a deduction for depletion. It was the contention of the Government that the assignments in question constituted sales and not subleases, and since the taxpayer retained no reversionary interest he was not entitled to depletion. The Court, in deciding that the taxpayer was entitled to a deduction for depletion, used the following language:

> It has been elaborately argued at the bar and in the briefs whether under Louisiana law the two instruments are assignments or subleases. We do not think the distinction material. * * * The language of the statute is broad enough to provide, at least, for every case in which the taxpayer has acquired, by investment, any interest in the oil in place, and secures, by any form of legal relationship, income derived from the extraction of the oil, to which he must look for a return of his capital.

It is apparent that in those cases the question was whether the taxpayer had "an 'economic interest' in the oil in place which is depleted by severance" regardless of the legal nomenclature to be applied to it, and if it appeared that the taxpayer had such an economic interest, the courts were not interested in determining its exact legal category. In the instant case, however, it is precisely the question of legal nomenclature in which we are interested.

2. Another issue presented herein is whether the petitioner is entitled to deduct from the gross income of 1937 normal and excess profits taxes for that taxable year which were paid by it in 1938. The petitioner made its income tax returns for both 1937 and 1938 on the cash basis. Its income tax for 1937 was $14,454.02 and its excess profits tax $1,448.20. It is the petitioner's contention that since they were assessed upon its income for 1937 they must be allowed as deductions in the computation of the surtax liability for 1937. Since we have held that petitioner is not a personal holding company, this question would now appear to be moot. However, we have no doubt but that there is no merit in this contention. A taxpayer upon a cash basis is entitled to a credit of only the amount of tax "paid" within the year. See section 356 (a) of the Revenue Act of 1936, added by section 1 of the Revenue Act of 1937. If the petitioner had

made its returns upon the accrual basis it would clearly be entitled to the deduction claimed. But, since it made its returns for both years upon the cash basis, it is entitled to the deduction of only the amount of the tax paid in 1937, which was $452.53, the amount of its income tax liability for 1936.

3. There is also presented the question whether the $33,000 percentage depletion deduction which the petitioner deducted in 1937 on the $120,000 cash bonus received in that year was income taxable to it in 1938 when the lease was abandoned without any production, or should be restored to petitioner's income for 1937.

The petitioner makes no contention that the amount should be added to its correct net income for 1937. It does, however, contend that it received nothing in 1938 and that the $33,000 can not be taxed to it in 1938. It further submits on brief that but for the consideration of this $33,000 as royalties of 1938 it would not be liable to personal holding company surtax for that year. Whether this is true or not we can not determine from the evidence of record.

That the $33,000 constituted taxable income of the petitioner for either 1937 or 1938 admits of no doubt. *Grace M. Barnett*, 39 B. T. A. 864; *Sneed* v. *Commissioner*, 119 Fed. (2d) 767, affirming 40 B. T. A. 1136. We think that it should be treated as taxable income of petitioner for the year 1938.

In the *Barnett* case we held that the repeated reenactment by Congress of the provisions relating to depletion gave the force and effect of law to the long established and uniform regulations of the Commissioner to the effect that if depletion is allowed with respect to a bonus payment and no production occurs during the life of the lease, the lessor must restore to his capital account and report as income in the year the lease terminates the amount which he has been allowed to deduct as depletion. See Regulations 94, art. 23 (m)–10; Regulations 45, art. 215, as amended by T. D. 3938, C. B. V–2, p. 117. In taking and being allowed a depletion deduction in respect of the bonus payment in 1937 the petitioner treated itself as a "lessor" under the regulations, and must, consequently, be treated as such in determining the correct adjustment to be made upon the termination of the lease assigned by it before any oil or gas was extracted therefrom. This adjustment, as we have indicated, should be a return of the amount of the deduction as income for the year in which the lease terminated.

The fact that the question here involved is covered by a specific regulation having, as we have held in the *Barnett* case, the force and effect of law distinguishes this case from that of *E. B. Elliott Co.*, 45 B. T. A. 82. While the *dicta* contained in the concluding paragraph of our opinion in the *Barnett* case must now be construed in conformity with our opinion in the *Elliott* case, the holding in the

*Barnett* case with regard to the force and effect to be given to the Commissioner's regulations applicable to the particular issue here before us is still valid for the reasons therein given.

We are, however, of the opinion that the $33,000 has the same character for income tax purposes under both Title I and Title IA for 1938 as the original bonus payment had in 1937, from which payment it was deducted; that is to say, the portion of the bonus ($33,000) upon which the petitioner is not taxed for 1937, does not constitute royalties for 1938, as the respondent has determined.

Since we have held that petitioner was not a personal holding company for 1937 within the meaning of the statute, it is unnecessary to consider the arguments advanced by petitioner to the effect that the application of Title IA of the Revenue Act of 1936, as amended, to petitioner's tax liability for the year 1937, would be so confiscatory as to render this title unconstitutional.

Reviewed by the Court.

> *In Docket No. 101596 decision will be entered for petitioner. In Docket No. 103663 decision will be entered under Rule 50.*

DISNEY, *J.*, concurs only in the result.

---

SMITH, *J.*, dissenting: "Personal holding company income" is defined by section 353 of the Revenue Act of 1936 (added by section 1 of the Revenue Act of 1937) as including "mineral, oil, or gas royalties" except in circumstances not here present. The Court holds that the cash bonus of $120,000 received by the petitioner as a part of the consideration for the assignment of its interest in a lease to the Humble Oil & Refining Co. was not a "royalty" since the payment was "in no way contingent upon or payable from production of oil or gas."

I do not think that this observation is correct, in the light of many court opinions.

In *Burnet* v. *Harmel*, 287 U. S. 103, the Supreme Court held that a bonus and royalties received by the lessor under an oil lease were not capital gains, but were ordinary income, and were both subject to depletion deductions. The Court said:

* * * Bonus and royalties are both consideration for the lease, and are income of the lessor. We cannot say that such payments by the lessee to the lessor, to be retained by him regardless of the production of any oil or gas, are any more to be taxed as capital gains than royalties which are measured by the actual production. * * *

To the same effect is *Murphy Oil Co.* v. *Burnet*, 287 U. S. 299; *Palmer* v. *Bender*, 287 U. S. 551; *Bankers' Pocahontas Coal Co.* v. *Burnet*, 287 U. S. 308; *Anderson* v. *Helvering*, 310 U. S. 404; and *Commissioner* v. *West Production Co.*, 121 Fed. (2d) 9; certiorari denied, 314 U. S. 682.

In *Anderson* v. *Helvering, supra*, the assignees of certain oil interests were held taxable on all of the proceeds from the sale of the oil produced, though a portion of such proceeds was required to be paid to the assignor under the contract of assignment. In its opinion the Court said, referring to *Burnet* v. *Harmel, supra; Murphy Oil Co.* v. *Burnet, supra*, and *Bankers' Pocahontas Coal Co.* v. *Burnet, supra*, that: "Cash bonus payments, when included in a royalty lease, are regarded as advance royalties, and are given the same tax consequences."

In *Sneed* v. *Commissioner* (C. C. A., 5th Cir.), 119 Fed. (2d) 767; affirming 40 B. T. A. 1136, the court said:

\* \* \* It is too well settled to require further discussion that when oil and gas reserves are leased for bonus and royalty, the bonus is an advanced royalty, and includes not only gain which is income but also a return of capital about to be depleted which is not income. \* \* \*

In most of the above cited cases the taxpayer was the owner of the fee in the land and had executed an oil or gas lease for a cash bonus plus an additional amount to be paid from production. But the same rule applies where a lessee assigns his interest in a lease for a like consideration. See *Cullen* v. *Commissioner* (C. C. A., 5th Cir.), 118 Fed. (2d) 651; *Commissioner* v. *West Production Co., supra*.

I can see no reason for giving the term "royalty" included in the definition of personal holding company income a different connotation from that which has been given to the term in the court opinions above cited.

ARNOLD, HILL, and OPPER, *JJ.*, agree with this dissent.