## RODNEY, Inc., v. HOEY.

District Court, S. D. New York.

Jan. 18, 1944.

LeBoeuf & Lamb, of New York City (Horace R. Lamb and John L. Grose, both of New York City, of counsel), for plaintiff.

James B. M. McNally, of New York City, U. S. Atty. (by William L. Lynch and John B. Creegan, Asst. U. S. Attys., both of New York City), for defendant.

GODDARD, District Judge.

This action is brought to recover the sum of $49,304.22 plus interest, the amount of taxes, surtaxes, interest and penalty assessed against the plaintiff for the taxable year 1937 and paid to James J. Hoey, Collector of Internal Revenue for this district. Mr. Hoey having died on November 10, 1941, his executrix was substituted as party defendant.

On December 15, 1930, Mrs. Ruth Brady Scott [hereinafter referred to as Mrs. Scott] caused Gladstone Company, Ltd. [hereinafter referred to as Gladstone], to be organized under the laws of the Colony of Newfoundland with an authorized capital stock of 100 shares of the par value of $100 each. Her stated purpose was to avoid the imposition of British taxes inasmuch as she, an American citizen, had married a British subject and taken up her residence in England at that time.

On December 20, 1930, Gladstone issued 20 shares of its stock to Mrs. Scott for $2,000 in cash. The following day she trans-

ferred to Gladstone 1428 shares of Brady Security & Realty Corporation stock together with the right to receive accrued dividends, and received in exchange 50 shares of Gladstone stock; also Bond A in the principal amount of $100,000 payable January 7, 1931, without interest; also Serial Bonds 1 to 41 inclusive each in the principal amount of $12,000 payable every three months beginning April 1, 1931 with interest at 4%. On August 20, 1930, a dividend of $70 per share had been declared on the Brady Security & Realty Corporation stock payable December 31, 1930, to stockholders of record on September 2, 1930. This dividend, amounting to $99,960, was received by Gladstone on January 5, 1931, and on January 7, $100,000 was paid to Mrs. Scott on redemption of Bond A.

On March 17, 1931, Mrs. Scott transferred to Gladstone 700 shares of stock of the Consolidated Gas Company of New York which had a cost basis to her of $23,306.21 for tax purposes and received for this stock the remaining 30 shares of Gladstone stock and Serial Bonds 42 to 47 inclusive. On March 30, 1931, Gladstone sold in Canada the Consolidated Gas Company stock for $70,350.

On February 19, 1931, Mrs. Scott caused the plaintiff Rodney, Incorporated [hereinafter referred to as Rodney] to be incorporated under the laws of Delaware and on or about April 1, 1931, caused 100 shares of Gladstone, owned by her to be transferred to Rodney and received in exchange from Rodney all of its 100 shares issued and outstanding stock.

During the calendar year 1937 Gladstone made payments aggregating $56,000 to Mrs. Scott on account of principal of the Gladstone bonds owned by Mrs. Scott and in that year Brady Security & Realty Corporation paid to Gladstone $48,552 as dividends on the Brady stock then owned by Gladstone. This was the only income received by Gladstone in 1937. Gladstone paid a $50 franchise tax, $503.76 for miscellaneous office expenses, and Federal taxes payable at the source of $4,855.20 on dividends received, which left a net income of $43,143.04 for Gladstone for the year 1937. However, Gladstone neither declared nor paid any dividends to Rodney that year.

Prior to March 15, 1938, Rodney filed with the Collector of Internal Revenue of this district its corporation income and excess profits return, Form 1120, for the calendar year 1937. In this return Rodney reported a loss of net income of $66. Rodney also reported a deficit in earned income and undivided profits of $329.75 for the preceding taxable year, and a deficit in earned surplus at the close of the taxable year of $395.75. Notwithstanding the fact that Rodney stated on Form 1120 that it is a personal holding company within the meaning of Section 351 of the Revenue Act of 1936, as amended by the Revenue Act of 1937, 26 U.S.C.A. Int.Rev.Acts, page 938, it did not follow the instruction that if so an additional return on Form 1120-H must be filed. Rodney did not file Form 1120–H for the year 1937. It did not report as a dividend Gladstone's Supplement P net income of $43,143.04 as it should have done. Supplement P net income is the net income with certain adjustments of a foreign personal holding company.[1]

The Commissioner of Internal Revenue on July 26, 1940, made a deficiency assessment for the year 1937 against Rodney for the taxes, interest and penalty set forth below on the ground that Gladstone was a personal holding company within the provisions of the Revenue Act of 1936, as amended by the Revenue Act of 1937, and that Rodney, as the sole stockholder of Gladstone, was required to report as income the sum of $43,143.04 [Gladstone's Supplement P net income] as if that sum had been declared and paid as a dividend on the stock of Gladstone.

| | |
|---|---:|
| Normal and Undistributed Profits Tax | $12,801.05 |
| Interest March 15, 1938 to July 26, 1940 | 1,815.29 |
| Personal Holding Corporation surtax | 32,108.78 |
| 25% Penalty for failure to file return Form 1120-H under § 291 of the Revenue Act of 1936 | 8,026.95 |
| Interest from March 15, 1938 to July 26, 1940 | 4,553.15 |
| | $59,304.22 |

The above named amount was paid under protest August 5, 1940; claim for refund was filed on August 30, 1940, and disallowed within a period of two years prior to the commencement of this action.

---

[1] Defined in Section 336 of the Revenue Act of 1936, 26 U.S.C.A. Int.Rev.Acts, page 931.

Rodney claims that it had no income subject to taxes in 1937 and that if the "undistributed Supplement P net income" of Gladstone is deemed to be "income" of Rodney the law so providing is not constitutional.

Th principal issues presented are:

1. Does the Revenue Act of 1936 as amended by the Revenue Act of 1937 apply to Rodney?

2. If so, is the statute constitutional; more particularly Section 337?[2]

There are also involved the questions of whether the penalty imposed was warranted; and whether Rodney should be allowed a deduction for the amount of the tax which accrued in 1937 but not paid until 1940.

■ Gladstone was a foreign personal holding company in 1937 as defined by Section 331 of the Revenue Act of 1936 as amended by the Revenue Act of 1937, 26 U.S.C.A. Int.Rev.Acts, page 927, for more than sixty per cent of its gross income was foreign personal holding company income [Section 332] and more than fifty per cent of its outstanding stock was directly or indirectly owned by not more than five individuals who were citizens or residents of the United States. Counsel for the plaintiff argues that the word "individuals" in Section 331[3] defining a foreign personal holding company as one where more than fifty per cent of the stock shall be owned directly or indirectly by not more than five individuals precludes the provisions from application where the stock is owned by a corporation. However, I think this argument is without substance. An examination of the various sections clearly indicate that Congress intended to include domestic corporations as individuals as used in Section 331(a) (2). Furthermore, Section 337 (a) referring to "shareholders" who must include undistributed Supplement P net income of a foreign personal holding company in their gross income, specifically names "domestic corporations". To hold otherwise would be to frustrate the clear intent of Congress in enacting the Statute, which was to prevent circumvention of tax obligations, to forestall any further practice of the "incorporated pocketbook" type of company, and to make it unprofitable to do so. In National Accounting Co. v. Dorman, 11 F.Supp. 872, a three judge court passing upon the constitutionality of Kentucky Statute, held that the word "individual", while sometimes used to refer only to a single natural person, is broad enough to also embrace partnerships and corporations unless context of statute repels such construction.

■ Rodney was a personal holding company as defined by Section 352 of the Revenue Act of 1936, 26 U.S.C.A. Int.Rev.Acts, page 938, as its only net income was the dividend it received from Gladstone, and Mrs. Scott, a citizen of the United States, owned all Rodney's stock.

■ Gladstone paid no dividends in 1937; thus its undistributed Supplement P net income was $43,143.04. Section 337 is therefor applicable, and that section requires that a shareholder of the foreign holding company shall include in its gross income, as a dividend, the amount of undistributed Supplement P net income of the foreign company. Accordingly, Rodney should have reported the $43,143.04 as a dividend in its 1937 return and this amount, less $66 for expenses, or $43,077.04 was its net income.

Computing the taxes and interest upon the foregoing facts and figures, they amount to the $59,304.32 [inclusive of the penalty] as set forth previously in detail.

■ Plaintiff contends that the tax Act under which the tax was imposed is unconstitutional as no actual income was received—merely a constructive receipt of income. This contention has been decided

---

[2] "§ 337. Corporation Income Taxed to United States Shareholders.

"(a) General rule. The undistributed Supplement P net income of a foreign personal holding company shall be included in the gross income of the citizens or residents of the United States, domestic corporations, domestic partnerships, and estates or trusts [other than estates or trusts the gross income of which under this title includes only income from sources within the United States], who are shareholders in such foreign personal holding company [hereinafter called 'United States shareholders'] in the manner and to the extent set forth in this Supplement. * * *" 26 U.S.C.A. Int.Rev.Acts, page 932.

[3] (a) (2) "Stock ownership requirement. At any time during the taxable year more than 50 per centum in value of its outstanding stock is owned, directly or indirectly, by or for not more than five individuals who are citizens or residents of the United States, hereinafter called 'United States group'."

to the contrary by the Circuit Court of Appeals for this Circuit in its recent decision in Eder et al. v. Commissioner of Internal Revenue, 2 Cir., 138 F.2d 27, holding that Section 337 was a constitutional exercise of Congressional power. See also Helvering v. National Grocery Co., 304 U.S. 282, p. 288, 58 S.Ct. 932, 82 L.Ed. 1346, rehearing denied 305 U.S. 669, 59 S.Ct. 56, 83 L.Ed. 434; American Package Corp. v. Commissioner of Internal Revenue, 4 Cir., 125 F.2d 413, 140 A.L.R. 642; Porto Rico Coal Co. v. Commissioner of Internal Revenue, 2 Cir., 126 F.2d 212.

The plaintiff contends that to impose a tax of $44,908.83 [exclusive of interest and penalty] on an income of $43,143.04 is confiscation. But this harsh result is largely the result of the fact that plaintiff was on a cash basis and did not pay its 1937 tax until 1940.

As Rodney was on a "cash" and not an "accrual" basis, the Commissioner, in computing the tax liability of Rodney did not give effect to the normal and undistributed profits tax of $12,801.05 for the year 1937 which were actually paid in 1940. The Commissioner felt justified in view of Section 48(c) of the Revenue Act of 1936, 26 U.S.C.A. Int.Rev.Acts, page 842, and the ruling of the Board of Tax Appeals in M. W. Alworth v. Commissioner of Internal Revenue, 1938, 38 B.T.A. 656. However, it seems to me that his computation fails to clearly reflect Rodney's income for 1937, bearing in mind that the income itself was not actually but only constructively received in 1937.

■ I think that to clearly reflect its income, the provisions of Section 43 of the Revenue Act of 1936, 26 U.S.C.A. Int. Rev.Acts, page 839,[4] should be invoked and that Rodney should for present purposes be deemed to be on an accrual basis and be allowed a deduction for the amount of the liability for this tax which arose in 1937 in computing its personal holding company surtax. In Aluminum Castings Co. v. Routzahn, Collector, etc., 282 U.S. 92, 51 S.Ct. 11, 75 L.Ed. 234, it was said that " * * * the return must be filed on the accrual basis * * * where true income

cannot be arrived at on the basis of actual receipts and disbursements." 282 U.S. at page 98, 51 S.Ct. at page 13, 75 L.Ed. 234.

■■ In respect to the assessment of a twenty-five per cent penalty of $8,026.95 for the failure of Rodney to file Form 1120–H—this was imposed under Section 291 of the Revenue Act of 1936, 26 U.S.C.A. Int.Rev.Acts, page 920, for failure to file such form as required under Article 358, Regulations 94. Rodney did not file Form 1120–H. Notwithstanding the fact that Rodney answered "yes" in Form 1120, to the question—Is the corporation a personal holding company within the meaning of Section 351 of the Revenue Act of 1936, as amended by the Revenue Act of 1937? If so—an additional return on Form 1120–H must be filed.

Section 291 places the burden of showing that the failure to file is due to reasonable cause and not due to willful neglect. The reasons for Rodney's failure to file Form 1120–H are found in the testimony of its attorney; that he thought Gladstone had no "Supplement P net income" after its payment to Mrs. Scott of the $56,000 to retire certain Gladstone bonds which she held; that although he knew that Section 336 of the Revenue Act of 1937 did not, in terms, allow credit for the retirement of such indebtedness, he was of the opinion that there was an omission in the statute which would be supplied by Congressional amendment. He, however, admitted that as the statute then stood, it was clear that no credit for this payment to Mrs. Scott could be allowed; also that he was in doubt as to whether Rodney or Mrs. Scott was the United States shareholder of Gladstone and so neither of them filed a return reporting the undistributed income of Gladstone; another reason stated for not filing it was that he was afraid that he would waive the right to test the constitutionality by filing a return and paying the tax. The answer to this is that the normal and recognized procedure is either to pay the tax and sue for a refund, which was eventually done, or to file a petition to the tax court to test the assessment proposed by the Commissioner. These and other reasons were

4 "The deductions and credits [other than the dividends paid credit provided in section 27] provided for in this title shall be taken for the taxable year in which 'paid or accrued' or 'paid or incurred', dependent upon the method of accounting upon the basis of which the net income is computed, unless in order to clearly reflect the income the deductions or credits should be taken as of a different period. * * * * "

discussed in conference between Rodney's treasurer and its counsel, and the decision not to file Form 1120–H was intentional, and they do not, it seems to me, show reasonable cause for the failure. It must also be noted that the plaintiff's treasurer and its attorney were familiar with Form 1120–H, for that form was filed by them for Rodney and for Gladstone for the year 1936. It appears therefore that the penalty imposed by the Commissioner must be sustained. O'Sullivan Rubber Co. v. Commissioner of Internal Revenue, 2 Cir., 120 F.2d 845; A. G. Fides v. Commissioner of Internal Revenue, 4 Cir., 137 F.2d 731, at page 735, certiorari denied 64 S.Ct. 266, December 13, 1943; Noteman v. Welch, Collector, 1 Cir., 108 F.2d 206; National Contracting Co. v. Commissioner of Internal Revenue, 8 Cir., 105 F.2d 488; Logan Coal & Timber Ass'n v. Helvering, Collector of Internal Revenue, 3 Cir., 122 F.2d 848.

The plaintiff is entitled to a recovery of so much of the amount which it paid under protest as arose from the omission of the Commissioner to deduct the $12,801.05, which accrued for normal and undistributed profits tax in 1937, but nothing more.

Proposed findings of fact and conclusions of law in accordance with the above to be submitted by defendant upon ten days notice to plaintiff.