Merrimac Trading Company v. Commissioner.
Merrimac Trading Co. v. Commissioner
Docket No. 6502.
United States Tax Court
1946 Tax Ct. Memo LEXIS 93; 5 T.C.M. (CCH) 757; August 29, 1946
Frank J. Albus, Esq., Earle Bldg., Washington, D.C., for the petitioner. William D. Harris, Esq., for the respondent. OPPER
Memorandum Findings of Fact and Opinion OPPER, Judge: By this proceeding, petitioner challenges respondent's determination of a deficiency in personal holding company surtax in the amount of $49,866.51 for the year 1941. In his notice of deficiency, respondent also determined deficiencies in income tax in the amount of $318, and in declared value excess-profits tax in the amount of $1,025.81, for 1941, neither of which is controverted by petitioner. With reference to the contested deficiency, two issues are raised: (1) whether petitioner, in computing its Subchapter A net income, is entitled *94 toa deduction for the taxable year 1941 for income tax and declared value excess-profits tax for that year, under section 505 (a) of the Internal Revenue Code; (2) whether in determining undistributed Subchapter A net income, subject to personal holding company surtax, petitioner is entitled to a credit of $39,934.92, claimed by petitioner as the amount irrevocably set aside by it in 1941 to pay an indebtedness incurred by it prior to January 1, 1934. Some of the facts have been stipulated. Findings of Fact The stipulated facts are hereby found accordingly. Petitioner, a Delaware corporation, was incorporated on August 7, 1930, and has been engaged in the business of buying, selling, and investing in securities, all of its income being derived from dividends, interest, and profit on the sale of securities. Its tax returns for 1941 were filed with the collector of internal revenue for the district of Delaware. Petitioner's authorized capital of 250 shares of no par value was originally subscribed for by Harvey C. Miller, and immediately thereafter he transferred 125 shares to his daughter, Mary M. McKinney, and 125 shares to her husband, Walter B. *95 McKinney. On June 30, 1941, and again on October 5, 1943, each of the McKinneys transferred five shares to each of their six children, as a result of which each child now holds 20 shares of petitioner's stock. On its corporation income and declared value excess-profits tax return for 1941, petitioner failed to answer the questions as to the basis or method used in computing net income. The questions were answered in the following manner on its returns for other years: Year
Basis Indicated
1931
Actual receipts and disbursements
1932
Accrual basis
1933
Cash receipts and disbursements
1934
Same
1935
Accrual basis
1936
No answers
1937
Cash receipts and disbursements
1938
No answers
1939
Same
1940
Cash receipts and disbursements
1942
No answers
Petitioner's books of account for the year 1941 reflect that social security taxes were entered as accruals, while dividends received were entered on a cash receipts and disbursements basis. On its Federal personal holding company returns, (Form 1120 H) for the years 1934-1942, petitioner deducted the following amounts for "Federal income, war profits, and excess profits taxes:" Other Federal
Taxes Reported
Taxable
on Form 1120
year
Amount
for the year
1934
None
$ 182.27
1935
$ 3,377.51
(composed
3,195.24
of $182.27
3,195.24)
1936
13.93
13.93
1937
13.93
155.96
1938
155.96
49.96
1939
49.96
528.97
1940
529.06
675.54
1941
20,608.04
20,776.01
1942
None
None
*96 Petitioner's books of account were kept on the accrual basis. In the year 1941, petitioner was indebted to the Estate of Harvey C. Miller for securities which it purchased from Miller prior to January 1, 1934. Miller died in 1936 at which time his estate became the creditor. Miller's daughter, Mrs. McKinney, who was the wife of petitioner's president, was the beneficiary of the estate. During 1941, the Philadelphia and Norfolk Steamship Company, in which petitioner owned 3,500 shares of common stock, was completely dissolved, and on December 3, 1941, petitioner received a distribution of $91,303.18. This stock was acquired by petitioner at a total cost of $25,747, with the result that in 1941, it realized a gain on the dissolution of $65,556.18, which petitioner included in its 1941 income. Petitioner's president, because of his association with the Steamship Company, knew of the imminence of the dissolution prior to its occurrence. At the time he agreed with his wife that the indebtedness in favor of the estate was to be paid out of funds received from the dissolution. He also discussed the matter with petitioner's bookkeeper, telling her to take care of the old indebtedness *97 to the Miller estate. The bookkeeper thereupon made entries on petitioner's books as follows: (1) Journal entry dated September 30, 1941, debiting "surplus" and crediting "cash (reserve)" with $39,934.92; the entry carried the following explanation: To provide for payment of indebtedness of Estate of Harvey C. Miller, when funds are available through liquidation of P and N stock. The debit was posted to the "Surplus Account," and the credit was posted to an account entitled "Cash in Bank, Wilmington Trust Company." (2) Journal entry dated December 31, 1941, debiting "accounts Payable, Harvey C. Miller" and crediting "Liab. Retirement" with the sum of $39,934.92, the entry carrying the following explanation: for payment of amount due Estate of Harvey C. Miller. The credit was posted to "Liability Reserve Account," and the debit was posted to Harvey C. Miller Account No. 3." On March 3, 1942, petitioner paid the sum of $39,934.92 to the Miller estate. The following entries were made on petitioner's books to reflect payment of the debt: An entry in the cash book under "Disbursements," of $39,934.92, and one in the "Liability Reserve Account," closing out that account. *98 In order to correct an entry previously made, a journal entry was made dated March 31, 1942, debiting "Cash" and crediting "Surplus" in the amount of $39,934.92, with the explanation: To adjust cash and Surplus Accts. - improper entries 9/30/1941. The debit was posted to the account "Cash in Bank, Wilmington Trust Company," and the credit was posted to "Surplus." If necessity arose, the funds received upon the dissolution of the Steamship Company could have been used for other purposes, prior to payment of the indebtedness to the estate, notwithstanding the book entries made in 1941. Petitioner did not irrevocably set aside the sum of $39,934.92 or any part thereof in 1941 to pay or retire the indebtedness to the Estate of Harvey C. Miller. Opinion On the controverted question of fact we have made a finding to accord with petitioner's assertion that its books of account were kept on the accrual basis. Most of the evidence on this point is, it is true, ambiguous or inconclusive. Such items as salary would presumably be paid when due, and the entries would hence show no variation, whichever system was used. Corporate dividends, which evidently constituted the bulk of petitioner's *99 income, would be properly entered on the cash basis even in an accrual system. Tar Products Corp. v. Commissioner (C.C.A., 3rd Cir.), 130 Fed. (2d) 866; American Light & Traction Co., 3 T.C. 1048, affirmed (C.C.A., 7th Cir.) July 3, 1946. And the description of the method used, shown on petitioner's tax returns, is equally confusing. For the year in question the space is left blank. For some prior years the question is answered "cash," and for others "accrual." Even if the system were changed from time to time, which is contrary to the testimony, there would still be no light shed on the conduct of the tax year in issue. The single illuminating feature is the treatment of such items as Social Security taxes. Here there would be a difference in the treatment, depending on the method of accounting followed. And these seem consistently to have been entered as accruals, when due. Such a reliance is perhaps flimsy, but there is nothing tending to refute the inference to be drawn from it, and we think it sufficient, if barely so, to sustain petitioner's burden of proof. With this conclusion of fact, it becomes unnecessary to consider the question of law which *100 would otherwise be involved. Cf. M. W. Alworth, 38 B.T.A. 656, and Clarion Oil Co., 1 T.C. 751, with Rodney, Inc. v. Hoey (D.C.N.Y.) 53 F. Supp. 604; and Commissioner v. Clarion Oil Co., (C.A.D.C.), 148 Fed. (2d) 671, certiorari denied 325 U.S. 881 [66 S. Ct. 1575, 1580], reversing 1 T.C. 751. On the second issue, it seems evident that there was no irrevocable setting aside [1] of the funds in question. All that was done was a general agreement that the debt would be paid when cash was available for it out of the claim which petitioner expected to collect, and the bookkeeper was instructed to make an entry to that effect. Considering the claimed accrual system employed by petitioner, the entry made was no more than might be anticipated. There was nothing "irrevocable" about all this. There was not even any formal resolution of the board of directors. Petitioner's controlling director-stockholders could have changed their minds the next day, and in fact petitioner's president admitted that under sufficient provocation this might have happened. Such could not have been the case if the action had been truly *101 "irrevocable." Decision will be entered under Rule 50. Footnotes
1. SEC. 504. UNDISTRIBUTED SUBCHAPTER A NET INCOME. "For the purposes of this subchapter the term "undistributed subchapter A net income" means the subchapter A net income (as defined in section 505) minus - * * * *
"(b) Amounts used or irrevocably set aside to pay or to retire indebtedness of any kind incurred prior to January 1, 1934, if such amounts are reasonable with reference to the size and terms of such indebtedness;"↩