# ANDERSON *v.* HELVERING, COMMISSIONER OF INTERNAL REVENUE.*

No. 682. Argued April 2, 1940.—Decided May 20, 1940.

---

*Together with No. 683, *Prichard* v. *Helvering, Commissioner* of *Internal Revenue,* also on writ of certiorari, 309 U. S. 645, to the Circuit Court of Appeals for the Tenth Circuit.

*Mr. Charles H. Garnett* for petitioners.

*Mr. J. Louis Monarch,* with whom *Solicitor General Biddle, Assistant Attorney General Clark,* and *Messrs. Sewall Key, Joseph M. Jones,* and *Richard H. Demuth* were on the brief, for respondent.

MR. JUSTICE MURPHY delivered the opinion of the Court.

Oklahoma City Company in 1931 owned certain royalty interests, fee interests, and deferred oil payments in properties in Oklahoma. During that year it entered into a written contract with petitioner Prichard providing for the conveyance to him of these interests for the agreed consideration of one hundred sixty thousand dollars, payable fifty thousand in cash and one hundred ten thousand from one-half of the proceeds received by him which might be derived from oil and gas produced from the properties and from the sale of fee title to any or all of

the land conveyed. Interest at the rate of 6% per annum was to be paid from the proceeds of production and of sales upon the unpaid balance. Oklahoma Company was to have in addition a first lien and claim against "that one half of all oil and gas production and fee interest . . . from which the $110,000 is payable," the lien and claim "not in any way [to] affect the one-half interest in all oil and gas production and fee interest or the revenue therefrom which . . . [it] is to have and receive under this agreement." The proceeds derived from the oil and gas produced and from sales of the fee interests were to be paid directly to Prichard who was to deposit one-half of them at a designated bank, at intervals of 90 days, to the credit of Oklahoma Company. The agreement recited that Oklahoma Company desired "to sell all of its right, title and interest of whatsoever nature" in the described properties, and provided that a copy of the agreement and a release be placed in escrow for delivery to Prichard upon payment in full of the one hundred ten thousand dollars and interest. Immediately upon the execution of the contract the properties were conveyed to Prichard without reservation.[1] In entering into the agreement Prichard acted not only for himself but also for petitioner Anderson, each of them having a 45% interest.[2]

The gross proceeds derived from the production and sale of oil from the properties[3] during 1932 amounted to

---

[1] Petitioners state that "the instruments of transfer of those properties were absolute and unqualified assignments and conveyances" and that there was "no reservation of any sort of interest, much less any legal interest, specified in those assignments and conveyances."

[2] The remaining 10% interest was acquired for one Olsen, whose case was consolidated with those of Prichard and Anderson, and disposed of in the same opinion below, but who has not sought review here.

[3] The record does not indicate what portion of the gross proceeds was derived from the production and sale of oil and gas and what

some eighty-one thousand dollars. Prichard, upon receiving this sum, distributed one-half to Oklahoma Company pursuant to the contract. The question for decision is whether the proceeds thus paid over to Oklahoma Company should be included in the gross income of petitioners for the tax year 1932.[4] The ruling of the Board of Tax Appeals against petitioners was affirmed by the Circuit Court of Appeals. 107 F. 2d 459. Because of an asserted conflict with the applicable decisions of this Court, we granted certiorari. March 4, 1940.

It is settled that the same basic issue determines both to whom income derived from the production of oil and gas is taxable and to whom a deduction for depletion is allowable. That issue is, who has a capital investment in the oil and gas in place and what is the extent of his interest. *Helvering* v. *Bankline Oil Co.*, 303 U. S. 362, 367; *Helvering* v. *O'Donnell*, 303 U. S. 370; *Helvering* v. *Elbe Oil Co.*, 303 U. S. 372; *Thomas* v. *Perkins*, 301 U. S. 655, 661, 663; *Helvering* v. *Twin Bell Oil Syndicate*, 293 U. S. 312, 321; *Palmer* v. *Bender*, 287 U. S. 551. Compare *Helvering* v. *Clifford*, 309 U. S. 331.

Oil and gas reserves like other minerals in place, are recognized as wasting assets. The production of oil and gas, like the mining of ore, is treated as an income-producing operation, not as a conversion of capital investment as upon a sale, and is said to resemble a manufac-

---

portion, if any, was derived from sales of fees and from royalties on leases. The Commissioner in determining deficiencies against petitioners, however, added $11,276.39 to the gross income of each with the explanation that this amount represented "In-oil payments received in connection with the Patterson [Oklahoma Company] Deal" not reported by petitioners. Respondent, in view of this explanation by the Commissioner and the omission from the record of any disclosure of the method of computing the $11,276.39 addition to gross income, accepts petitioners' statement that "the only income from the properties here in dispute is from oil production."

[4] Revenue Act of 1932, c. 209, 47 Stat. 169.

turing business carried on by the use of the soil. *Burnet* v. *Harmel,* 287 U. S. 103, 106–107; *Bankers Coal Co.* v. *Burnet,* 287 U. S. 308; *United States* v. *Biwabik Mining Co.,* 247 U. S. 116; *Von Baumbach* v. *Sargent Land Co.,* 242 U. S. 503, 521, 522; *Stratton's Independence* v. *Howbert,* 231 U. S. 399, 414. The depletion effected by production is likened to the depreciation of machinery or the using up of raw materials in manufacturing. *United States* v. *Ludey,* 274 U. S. 295, 302–303; *Lynch* v. *Alworth-Stephens Co.,* 267 U. S. 364, 370. Compare *Von Baumbach* v. *Sargent Land Co., supra,* at 524–525. The deduction is therefore permitted as an act of grace and is intended as compensation for the capital assets consumed in the production of income through the severance of the minerals. *Helvering* v. *Bankline Oil Co.,* 303 U. S. 362, 366–367. The granting of an arbitrary deduction, in the interests of convenience, of a percentage of the gross income derived from the severance of oil and gas, merely emphasizes the underlying theory of the allowance as a tax-free return of the capital consumed in the production of gross income through severance. *Helvering* v. *Twin Bell Oil Syndicate,* 293 U. S. 312, 321; *United States* v. *Dakota-Montana Oil Co.,* 288 U. S. 459, 467.

The sole owner and operator of oil properties clearly has a capital investment in the oil in place, if anyone has, and so is taxable on the gross proceeds of production and is granted a deduction from gross income as compensation for the consumption of his capital. See *Burnet* v. *Harmel, supra,* at 107–108; *Helvering* v. *Clifford,* 309 U. S. 331. By an outright sale of his interest for cash, such an owner converts the form of his capital investment, severs his connection with the production of oil and gas and the income derived from production, and thus renders inapplicable to his situation the reasons for the depletion allowance. "The words 'gross income from the property,' as used in the statute governing the allowance for deple-

tion, mean gross income received from the operation of the oil and gas wells by one who has a capital investment therein,—not income from the sale of the oil and gas properties themselves." *Helvering* v. *Elbe Oil Land Co.,* 303 U. S. 372, 375–376.

Other situations, falling between the two mentioned, have been put on one side or the other as the cases arose. The holder of a royalty interest—that is, a right to receive a specified percentage of all oil and gas produced during the term of the lease—is deemed to have "an economic interest" in the oil in place which is depleted by severance. *Palmer* v. *Bender,* 287 U. S. 551, 557; *Murphy Oil Co.* v. *Burnet,* 287 U. S. 299; *Burnet* v. *Harmel,* 287 U. S. 103. See *Lynch* v. *Alworth-Stephens Co.,* 267 U. S. 364. Cash bonus payments, when included in a royalty lease, are regarded as advance royalties, and are given the same tax consequences. *Burnet* v. *Harmel,* 287 U. S. 103; *Murphy Oil Co.* v. *Burnet,* 287 U. S. 299; *Bankers Pocahontas Coal Co.* v. *Burnet,* 287 U. S. 308. Compare *Helvering* v. *Elbe Oil Land Co.,* 303 U. S. 372, 375. A share in the net profits derived from development and operation, on the contrary, does not entitle the holder of such interest to a depletion allowance even though continued production is essential to the realization of such profits. *Helvering* v. *O'Donnell,* 303 U. S. 370; *Helvering* v. *Elbe Oil Co.,* 303 U. S. 372. Similarly, the holder of a favorable contract to purchase wet gas at the mouth of the well is denied a depletion allowance on the difference between the contract price and the fair market value. *Helvering* v. *Bankline Oil Co.,* 303 U. S. 362. Such an interest has been characterized by us as a "mere economic advantage derived from production, through a contractual relation to the owner." *Helvering* v. *Bankline Oil Co., supra,* at 367.

*Thomas* v. *Perkins,* 301 U. S. 655, relied upon by petitioners, presented the issue whether the right to oil pay-

ments—that is, the right to a specified sum of money, payable out of a specified percentage of the oil, or the proceeds received from the sale of such oil, if, as and when produced—should be treated for tax purposes like the right to oil royalties or like the right to cash payments upon a sale. In that case, the assignment of lease provided for payments in oil only without the reservation of a royalty interest. The question was whether the assignees' gross income should include moneys paid to the assignors by purchasers of the oil. We stated (p. 659): "The granting clause in the assignment would be sufficient, if standing alone, to transfer all the oil to the assignee. It does not specifically except or exclude any part of the oil. But it is qualified by other parts of the instrument. The provisions for payment to assignors in oil only, the absence of any obligation of the assignee to pay in oil or in money, and the failure of assignors to take any security by way of lien or otherwise unmistakably show that they intended to withhold from the operation of the grant one-fourth of the oil to be produced and saved up to an amount sufficient when sold to yield $395,000." Under these circumstances, the moneys received by the assignors from the sale of the oil were deemed not to be income to the assignees. See also *Palmer* v. *Bender*, 287 U. S. 551.

The holder of an oil payment right, as an original proposition, might be regarded as having no capital investment in the oil and gas in place. The value of the right, even though dependent upon the extent of the oil reserves, is fixed at the moment of creation and does not vary directly with the severance of the mineral from the soil. In this sense it resembles the right to cash payments more closely than the right to royalty payments. Yet it does depend upon the production of oil, ordinarily can be realized upon only over a period of years, and permits of a simple and

convenient allocation between lessor and lessee of both the gross income derived from production and the allowance for depletion. Compare *Burnet* v. *Harmel,* 287 U. S. 103, 106–107. Accordingly, this Court in *Thomas* v. *Perkins* decided that the provision in the lease for payments solely out of oil production should be regarded as a reservation from the granting clause of an amount of oil sufficient to make the agreed payments, and should be given the same tax consequences as a provision for oil royalties. The decision did not turn upon the particular instrument involved, or upon the formalities of the conveyancer's art, but rested upon the practical consequences of the provision for payments of that type. See *Palmer* v. *Bender,* 287 U. S. 551, 555–557; *Burnet* v. *Harmel,* 287 U. S. 103, 111.

The Government maintains that the present case is distinguishable from *Thomas* v. *Perkins* for the reason that the basis for decision there was that ownership of sufficient oil to make the payments had not been conveyed to the assignee but remained in the assignor. It asserts that the terms of the contract and the instruments of conveyance here negative any intention on the part of the parties to withhold from the operation of the grant an amount of oil equal to the oil payments. The following factors, among others, are relied upon as supporting this contention: (1) the contract contains no qualifying language reserving from the grant any interest in the oil and gas in place; (2) the deferred payments of one hundred ten thousand dollars were payable in cash and not directly in oil; (3) the deferred payments drew interest until paid; (4) Oklahoma Company had a first lien and claim against one-half of the oil and gas production and fee interest; (5) petitioner Prichard had the right to sell the fee interest covered by the contract and discharge the deferred payments out of the proceeds of such sale rather than out of the proceeds of the oil and gas production.

Several of the distinctions urged upon us by the Government are without substance. The economic consequences of the transaction are not materially affected by the circumstance that the provision for oil payments is not phrased in terms of a reservation from the conveyance to Oklahoma Company of an interest in the oil and gas in place. And the fact that the payments to Oklahoma Company are in cash rather than directly in oil is of no moment in determining the issues presented for decision. Compare, however, *General Utilities Co.* v. *Helvering,* 296 U. S. 200. Similarly, the retention of a lien, if it were construed as a lien only upon the oil and gas production, and nothing more,[5] would not make Oklahoma Company any the less dependent upon such production for payment of the amounts reserved.

The reservation of an interest in the fee, in addition to the interest in the oil production, however, materially affects the transaction. Oklahoma Company is not dependent entirely upon the production of oil for the deferred payments; they may be derived from sales of the fee title to the land conveyed. It is clear that payments derived from such sales would not be subject to an allowance for depletion of the oil reserves, for no oil would thereby have been severed from the ground; an allowance for depletion upon the proceeds of such a sale would result, contrary to the purpose of Congress, in a double deduction—first, to Oklahoma Company; second, to the vendee-owner upon the production of oil. *Helvering* v. *Twin Bell Oil Syndicate,* 293 U. S. 312, 321. We are of opinion that the reservation of this additional type of security for the deferred payments serves to distinguish

---

[5] The lien here appears to cover both the oil and gas production and the fee interest from which the deferred payments were to be derived.

this case from *Thomas* v. *Perkins*. It is similar to the reservation in a lease of oil payment rights together with a personal guarantee by the lessee that such payments shall at all events equal the specified sum. In either case, it is true, some of the payments received may come directly out of the oil produced. But our decision in *Thomas* v. *Perkins* does not require that payments reserved to the transferor of oil properties shall for tax purposes be treated distributively, and not as a whole, depending upon the source from which each dollar is derived. An extension of that decision to cover the case at bar would create additional, and in our opinion unnecessary, difficulties to the allocation for income tax purposes of such payments and of the allowance for depletion between transferor and transferee. In the interests of a workable rule, *Thomas* v. *Perkins* must not be extended beyond the situation in which, as a matter of substance, without regard to formalities of conveyancing, the reserved payments are to be derived solely from the production of oil and gas. The deferred payments reserved by Oklahoma Company, accordingly, must be treated as payments received upon a sale to petitioners, not as income derived from the consumption of its capital investment in the reserves through severance of oil and gas.

Petitioners, as purchasers and owners of the properties, are therefore taxable upon the gross proceeds derived from the oil production, notwithstanding the arrangement to pay over such proceeds to Oklahoma Company. See *Helvering* v. *Clifford*, 309 U. S. 331; *Reinecke* v. *Smith*, 289 U. S. 172, 177; *Old Colony Trust Co.* v. *Commissioner*, 279 U. S. 716.

*Affirmed.*