*1066 OPINION.
Hill:
The principal issue submitted for decision in this case involves the proper basis for determination of the amounts of taxable income derived by petitioner during thé years 1934 and 1935 from oil payments or interests in the production from oil and gas mining leases acquired by petitioner in consideration of the drilling of wells. Other questions arising in connection- with the main issue involve petitioner’s, right -to deductions for depletion, depreciation, and intangible drilling expense. .
In an, extended and detailed amendment to his original answer, respondent set up claims inconsistent-in many details with the computation of the deficiencies determined by him, and on brief has again changed his position in some respects. In his brief, respondent now contends that petitioner had a depletable interest in all of the leases or wells referred to in our findings of fact hereinabove, and must recover its capitalized costs of drilling and equipping the wells through depletion.
Petitioner’s contentions respecting the determination of taxable income and the recovery of costs are not uniform in respect of all the leases. As to some, petitioner concedes that it had a depletable interest; in others, petitioner contends that it had no depletable interest, and is entitled to recover costs through other methods, which will be referred to below.
As to the Buchanan, Burroughs, Davis, Knowles, Little No. 2, Little No. 3, Community No. 1, Pucker No. 8, Day-Koff, Hembree No. 1, Kicholson No. I,[1] and Cary Nos. 4 and 5[1] leases, petitioner contends that it had no ownership in the oil and gas in place, but only the right to receive a fixed amount out of the proceeds of a portion of the oil produced by each; that its rights essentially were no more than those of a mortgagee; that as to these leases the amounts received from the so-called oil payments should first be applied against operating expenses incurred and paid in connection with the production of oil from which the payments were derived; that any amounts remaining should then be applied to the return of costs; in other words, that the amounts to be taken into gross income are only those remaining after deduction of expenses and costs.
*1067 As to the Davis lease, petitioner further contends that the assignment conveyed to it a fractional working interest - only as security for the payment of a specified sum of money. Substantially the same contention is made as to the Rucker No. 8 lease, and, in the alternative, that intangible drilling expense and depreciation sustained on drilling equipment should be deducted from gross income.
In respect of the Day-Roff lease, petitioner contends that, under its contract, it drilled and equipped a well for which it was to' receive a consideration of $75,600 net, payable out of oil from three-fourths of the seven-eighths working interest if, as, and when oil was produced, saved, and sold from the premises; that when the: full amount of the oil payment was paid out there should then vest in-petitioner an undivided three-eighths of the seven-eighths working interest and at that time petitioner would become a joint owner in the leasehold estate to such extent. Petitioner argues, therefore, that since the payments out of oil were wholly contingent, the amounts received from the “in oil payments” should first be applied to expenses and costs and only the excess over expenses and, costs constituted taxable income; further that the unreturned cost when the oil payment is finally paid out represents the[1] cost to petitioner of its interest in the leasehold estate. In the alternative, petitioner says that if its interest in the Day-Roff lease was an interest in the leasehold, then petitioner is entitled to deduct intangible drilling expense, depletion, and depreciation on equipment.
As to the Hembree No. 1 lease, petitioner concedes that for the drilling of a well under its contract it acquired fifteen-sixteenths of the seven-eighths working interest until it had received $32,000 net, and seven-sixteenths of the seven-eighths working interest thereafter, and argues that it is entitled to deductions for depletion and intangible drilling expense.
In this connection, it is noted that both respondent and petitioner state in their respective briefs that for drilling the well on the Hem-bree No. 1 lease, petitioner acquired fifteen-sixteenths of the seven-eighths working interest until such interest netted $32,000, and seven-sixteenths of the seven-eighths working interest thereafter. However, the contract introduced in evidence recited that the owner of the lease agreed to assign and had assigned to petitioner an undivided fifteen-sixteenths of the seven-eighths working interest, and that it was understood by the parties that when the petitioner had received the sum of $32,000 out of the proceeds from the fifteen-sixteenths of the seven-eighths working interest, then petitioner should assign to the owner the seven-sixteenths of the seven-eighths interest. It seems apparent, therefore, that, if the fifteen-sixteenths of the seven-eighths working interest was first assigned, to petitioner, petitioner retained *1068 eight-sixteenths of such interest, and not seven-sixteenths, after it had assigned back to the owner seven-sixteenths of the seven-eighths working interest upon receipt in full of the $32,000 payment.
Petitioner admits that it is the owner of a depletable interest in the Jones-Brandenburg No. 1 and No; 3 leases, but says that it is entitled to deduct as expense its share of the intangible drilling costs. In respect of the Liddell lease, petitioner argues that it was the owner of an interest therein prior to the drilling of the wells, and is entitled to deduct intangible drilling expense and depreciation sustained on equipment. As to the Watson, Harris, and Harrod leases, petitioner contends that it is entitled to deduct intangible drilling expense from gross income.
Becent decisions of the Supreme Court of the United States, we think, have definitely established the basic principles applicable under the facts to the issues presented in respect of all of the oil and gas leases involved in these proceedings.
In Palmer v. Bender, 287 U. S. 551, the Court said:
It will be observed that the statute directs that reasonable allowance for depletion be made as a deduction in computing net taxable income, “in the case of * * * oil and gas wells, * * * according to the peculiar conditions in each ease.” The allowance to the taxpayer is not restricted by the words of the statute to cases of any particular class or to any special form of legal interest in the oil well. * * * The language of the statute is broad enough to provide, at least, for every case in which the taxpayer has acquired, by investment, any interest in the oil in place and secures, by any form of legal relationship, income derived from the extraction of the oil to which he must loolc for a return of his capital. [Italics supplied.]
Thomas v. Perkins, 301 U. S. 655, held that where oil and gas leases were assigned for a consideration payable partly in cash and an additional sum out of proceeds from the production of oil, such part of the proceeds from the production as was paid to the assignors was not taxable income to the assignees. It was further held that an assignor was entitled to deduct depletion from income received from his interest in the oil, and that an assignee was not entitled to deduct from income received from his share an allowance for depletion attributable to the assignor’s interest.
In Anderson v. Helvering, 310 U. S. 404, the facts show that the Oklahoma City Co. in 1931 entered into a contract for the conveyance of certain royalty interests, fee interests, and deferred oil payments in properties in Oklahoma to one Pritchard, acting for himself and one Anderson. The agreed consideration for the conveyance was $160,000, payable $50,000 in cash and $110,000 from one-half of the proceeds derived from oil and gas from the properties and from the sale of the fee title to any or all of the land conveyed. The Oklahoma City Co. was to have in addition a first lien and claim against “that one-half of all *1069 oil and gas production and fee interest * * * from which the $110,000” was payable. The Court held that the purchasers were taxable upon the gross proceeds from the oil production, notwithstanding their obligation to pay a part of such proceeds to the seller, for the reason that the seller had reserved an interest in the fee as well as an interest in the oil production, and was not required to look solely to the oil production for payment. Such reservation of an interest in the fee was considered similar to a reservation in a lease of oil payment rights together with a personal guarantee by the lessee that the payments should at all events equal the specified sum. It was further held that, in the interest of a workable rule, Thomas v. Perkins, supra, must not be extended beyond the situation in which, as a matter of substance, without regard to formalities of conveyancing, the reserved payments are to be derived solely from the production of oil and gas. In that connection, the Court said:
It is settled that the same basic issue determines both to whom income derived from the production of oil and gas is taxable and to whom a deduction for depletion is allowable. That issue is, who has a capital investment in the oil and gas in place and what is the extent of his interest. * * * The holder of a royalty interest — that is, a right to receive a specified percentage of all oil and gas produced during the term of the lease — is deemed to.have an economic interest in the oil in place which was depleted by severance. * * *
The holder of an oil payment right, as an original proposition, might be regarded as having no capital investment in the oil and gas in place. * * * Yet it does depend upon the production of oil, ordinarily can be realized upon only over a period of years, and permits of a simple and convenient allocation between lessor and lessee of both the gross income derived from production and the allowance for depletion. * * * Accordingly, this court in Thomas v. Perkins decided that the provision in the lease for payments solely out of oil production should be regarded as a reservation from the granting clause of an amount of oil sufficient to mate the agreed payments, and should be given the same tax consequences as a provision for oil royalties. * * * Similarly, the retention of a lien, if it were construed as a lien only upon the oil and gas production, and nothing more, would not make Oklahoma Company any the less dependent upon such production for payment of the amounts reserved.
The reservation of an interest in the fee, in addition to the interest in the oil production, however, materially affects the transaction. Oklahoma Company is not dependent entirely upon the production, of oil for the deferred payments; they may be derived from sales of the fee title to the land conveyed.
The principles enunciated in the foregoing decisions, so far as pertinent here, may be briefly summarized as follows: (1) A lessor or the owner of oil payment rights, who is required by the terms of the contract to look solely to the oil and gas or the proceeds from production for the agreed payments, has an economic interest in the oil and gas in place, is taxable upon the gross income derived from his interest, and is entitled to an allowance for depletion thereon. This rule is applicable in all cases where, as a matter of substance, *1070 without regard to formalities of conveyancing, the reserved or deferred payments are to be derived ¡solely from the production of. oil and gas. (2) The retention of a mortgage or other lien, if it be a lien only upon the oil and gas production, and nothing more, does not prevent application of the stated rule, since the owner of the oil payment is not thereby made any the less dependent upon the oil production for payment of the agreed amounts.
Without attempting to discuss in detail the provisions of the several drilling contracts and assignments in evidence in these proceedings relating to the leases involved, it seems apparent to us that all the leases come within the rules above stated. In some of them, as the consideration for drilling and equipping a well or participating therein jointly with the owner, petitioner acquired ownership of a fractional interest in the leaseholds; as to others, petitioner acquired an oil payment right, that is, the right to receive a specified sum out of the oil production if, as, and when oil was produced, saved, and sold.. Some of the drilling contracts contained words of assignment, while- in other cases separate assignments were executed. In some instances petitioner acquired an oil payment of an agreed amount, and also the ownership of a lesser undivided fractional interest in the leasehold thereafter. In some contracts it was stated that the assignment of the fractional interest was intended as security for the payment of the agreed amount. However, in respect of all of the leases involved, petitioner was required to look solely to the oil production for payment. While it is true, as argued by petitioner, that the owners agreed to pay specific amounts, as consideration for drilling the wells, yet the fact remains that the owner in each case agreed to pay only out of the oil if, as, and when produced. So far as disclosed by the record, in no instance was there a personal guarantee by an owner that the payments should at all events equal the specified sum. Nor is it shown in any case that petitioner was given a lien on anything other than the oil and gas production. In the contract covering the Davis lease it was affirmatively provided that there should be no personal liability upon the owner in respect of the oil payment, and a like intention of the parties, we think, may be fairly inferred from the provisions of the contracts relating to the other leases.
The right of petitioner to share in the oil produced under the various contracts and assignments constituted interests in the oil in place. Ortiz Oil Co., 31 B. T. A. 656; affd., 102 Fed. (2d) 508. Such interests represented capital investments, consisting of the costs and expenses of drilling and equipping the wells, which costs and expenses are not allowable deductions from current gross income, but are returnable only through deductions for depletion. United States v. Sentinel Oil Co., 109 Fed. (2d) 854; Dearing v. Commis *1071 sioner, 102 Fed. (2d) 91, affirming 36 B. T. A. 843; State Consolidated Oil Co. v. Commissioner, 66 Fed. (2d) 648; Nunn-Stubblefield Oil Co., 31 B. T. A. 180.
In two of the leases here involved petitioner acquired undivided fractional interests in the working interests until it had received specified amounts from oil production and lesser fractional interests in the leaseholds thereafter. These are the Day-Boff and Hembree No. 1 leases. Petitioner contends that the first undivided fractional interest in each such lease represented an “in oil” payment and that it acquired no interest in the oil in place until such payments had been made in full out of oil; hence, that it is entitled to deduct from gross income the amounts of its intangible drilling expenses and depreciation on equipment.
Petitioner’s contention on this point can not be sustained. In our opinion, petitioner did not acquire two separate and distinct interests in each lease, but acquired a single right measured by the two undivided fractional interests. Under the contract covering the Day-Boff lease such interest consisted of three-fourths of the seven-eighths working interest until $84,000 (later reduced by assignment to $75,600) had been received by petitioner,' and a three-eighths interest in the leasehold thereafter. Similarly, for drilling a well on the Hembree No. 1 lease, petitioner acquired fifteen-sixteenths of the seven-eighths working interest until such interest netted $32,000, and eight-sixteenths of the working interest thereafter. Cf. Kiesau Petroleum Corporation, 42 B. T. A. 69. In both cases, petitioner looked only to the oil to satisfy its contractual rights, and the costs and expenses of drilling the wells constituted the consideration paid by petitioner for those rights. Petitioner, therefore, is not entitled to deduct either intangible drilling costs or depreciation on equipment, which constituted component elements of its capital investment, returnable through depletion.
Petitioner makes substantially the same contention in respect of the Liddell lease, but based upon a different ground. Petitioner argues that it owned an interest in this lease prior to the drilling of the wells, and that, since it drilled the wells on land in which it owned an interest, it is entitled to deduct intangible drilling expense and depreciation on lease equipment.
The rule applicable on this point, we think, is correctly stated by the court in United States v. Sentinel Oil Co., supra. In that case it was held that expenditures made by the taxpayer in drilling a dry hole on land in which it owned an undivided interest were not deductible as a loss but constituted a capital investment, where it appeared that the consideration for the transfer of the undivided interest to the taxpayer was the taxpayer’s agreement to drill. Since the cost of drilling was the purchase price paid for the conveyance of the un *1072 divided interest in the land, and since tbe land was not worthless, it was held that no deductible loss had been sustained. The court pointed out that, in such a case, it was immaterial whether title to the undivided interest was not to pass until the owner or vendor had received a specified sum from the proceeds of the well, or whether the undivided interest passed to the purchaser upon execution of the contract. “In both cases the drilling expenditures were the consideration for the passing of title to the land.”
We can see no controlling distinction between the situation considered in the cited case, where the cost of drilling a well constituted the consideration paid for an undivided interest in the land, and the present case, where the cost of drilling constituted the consideration paid for an undivided interest in the oil production. In our opinion, the reasoning of the court compels application of the rule in both situations. ■
In respect of the Rucker No. 8 lease, petitioner states that this is the same property that is referred to as the “Hugh Hodges Drilling Co. No. 1” in the Board’s decision in I. A. O’Shaughnessy, Inc., Docket No. 98151 (memorandum opinion entered May 17, 1940). It appears that I. A. O’Shaughnessy, Inc., acquired by assignment one-half of petitioner’s interest in this lease, and in the decision of the Board just mentioned it was held that the petitioner there did not have a “capital investment in the mineral deposit which suffered depletion.” It was further held that the petitioner was not entitled to depletion, but to recover its costs from receipts, and was taxable on only the excess of such receipts over cost. Petitioner in the present proceedings urges that the same rule should be made here on the same property, now designated as Rucker No. 8. Our opinion in the O’Shaughnessy case was entered prior to the decision of the Supreme Court in Anderson v. Helvering, supra, and to the extent that it is in conflict therewith must be regarded as overruled. It will, therefore, not be followed here.
For the reasons indicated above, we hold, in respect of the 18 oil and gas mining leases set out or referred to in our findings of fact, that petitioner acquired in each an oil payment right, overriding royalty, or ownership of a fractional interest in the leasehold, representing an economic interest in the oil in place; that the respective amounts i*eceived therefrom during the taxable years constituted gross income to petitioner, upon which it is entitled to statutory allowances for depletion; that the consideration paid by petitioner for such interests consisted of the aggregate costs of drilling and equipping the wells, and constituted capital investments in depletable assets; and that hence petitioner is not entitled to deduct intangible drilling expense, cost of equipment, or depreciation on lease equipment sustained or incurred prior to completion of the wells.
*1073 Considerable discussion appears in briefs of both, parties concerning deductions allowable for depreciation and depletion, the differences between the parties arising mainly from their respective interpretations of the legal principles applicable under the facts. It is not apparent from the record that there is any serious controversy as to the proper method of computing such amounts, and, under the views expressed herein, neither the amounts allowed by respondent in determining the deficiencies, nor the amounts claimed by petitioner may be allowed in whole. In any event these are matters which may be settled properly under Rule 50, and they do not require consideration here.
Petitioner contends, finally, that the deficiencies in excess profits taxes were determined by respondent under an Act of Congress which is arbitrary and void, in that it is violative of the Fifth Amendment, to the Constitution. Sueh taxes were imposed by section 702 (a) of the Revenue Act of 1934. The validity of this and similar statutes has been sustained both by this Board and the .courts. See Chicago Telephone Supply Co. v. United States (Ct. Cls.), 23 Fed. Supp. 471; certiorari denied, 305 U. S. 628; Patrick McGovern, Inc., 40 B. T. A. 706; Brockway Glass Co., 43 B. T. A. 267.
The deficiencies in controversy will be redetermined in accordance with the foregoing opinion.

Decisions will be entered under Rule 50.