## J. S. ABERCROMBIE CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 6168.   Promulgated June 12, 1946.

*G. Kibby Munson, Esq.,* for the petitioner.

*Frank B. Schlosser, Esq.,* and *L. R. Van Burgh, Esq.,* for the respondent.

OPINION.

ARUNDELL, *Judge*: The theory underlying respondent's treatment of the "carried working interest" is that Atlatl and Coronado transferred to Harrison and petitioner all their interests in the oil and gas leases, that they retained nothing more than a right to share in net profits, and that therefore they had no economic interest in oil and gas in place. In that we think respondent is in error.

From the agreement and the assignment it is clear that Atlatl and Coronado reserved a one-sixteenth interest, a capital investment, in the minerals. The formal assignment was expressly made "subject to the reservations, and on the terms and conditions" of the agreement, one of which was that "Assignors do also hereby reserve unto themselves * * * as a carried working interest that shall be and remain the property of Assignors * * * one-sixteenth ($\frac{1}{16}$) interest, in and to all of the oil and gas leases."

With respect to the operation of the properties, the agreement provided that Harrison and petitioner were to have management and control and were obliged to sell, together with their own, the oil and gas accruing to the one-sixteenth carried interest. They were also to advance and pay all expenditures in connection with the properties. Under the detailed accounting procedure agreed upon, however, they were to recoup one-sixteenth of these expenditures by charging them against the proceeds of the oil and gas sales credited to the carried interest of the assignors.

In *Reynolds* v. *McMurray*, 60 Fed. (2d) 843; certiorari denied, 287 U. S. 664; and *Helvering* v. *Armstrong*, 69 Fed. (2d) 370, both of which involved carried interests and operating agreements of the same general character that we have before us, the taxpayers, who were the nonoperators, were held taxable on the income from oil production accruing to their carried interests, notwithstanding that they received no distribution in the taxable year because the operator was reimbursed from their shares for expenditures advanced on their behalf in connection with the properties. It is an immaterial distinction between those cases and this that here, in addition to the operating agreement, there was also a transfer of a portion of the interests of the nonoperators to the operators. So far as the retained one-sixteenth interest and the operating arrangement relating thereto are concerned, the principle is exactly the same. The income from oil production is

taxable to the owner of the capital investment which produces it. *Anderson* v. *Helvering*, 310 U. S. 404. Under the contract here, one-sixteenth of the proceeds from oil production—that part attributable to the reserved interest of Atlatl and Coronado—belonged to those companies, as did the expenditures chargeable to the carried interest. The income attributable to their interest is not taxable to petitioner.

As for respondent's point that what Atlatl and Coronado retained amounted to nothing more than a share in the net profits, we would observe that, even if that were so, the reservation of a share in or percentage of net profits does not of itself mean that a lessor or assignor has disposed of his entire interest and retains no capital investment in the oil in place. *Kirby Petroleum Co.* v. *Commissioner*, 325 U. S. 599; *Burton-Sutton Oil Co.* v. *Commissioner*, 326 U. S. 755.

The parties have stipulated the amount of the deficiency in the event we should hold that the income and expenditures attributable to the "carried working interest" belonged to Atlatl and Coronado. We have so held. Therefore,

*Decision will be entered that there is a deficiency of $36,640.04.*