PORTER ROYALTY POOL, Inc. v. COMMISSIONER OF INTERNAL REVENUE.

No. 10443.

Circuit Court of Appeals, Sixth Circuit.

Feb. 3, 1948.

Frank W. Coolidge, of Detroit, Mich. (John C. Evans and Frank W. Collidge, both of Detroit, Mich., on the brief), for petitioner.

L. W. Post, of Washington, D. C. (Theron L. Caudle, Helen R. Carloss, and Hilbert P. Zarky, all of Washington, D. C., on the brief), for respondent.

Before HICKS, SIMONS, and ALLEN, Circuit Judges.

HICKS, Circuit Judge.

Petitioner, Porter Royalty Pool, Inc., seeks a review of the decision of the Tax Court that there are deficiencies in its income taxes for the years 1940 and 1941 in the respective amounts of $70.81 and $49,943.20. The facts were stipulated, and as found by the Tax Court, are briefly as follows:

The petitioner is a Michigan corporation and filed its returns for the years involved with the Collector at Detroit. Prior to December 31, 1933, certain owners in fee of lands executed oil and gas leases to certain lessees in which they conveyed, for a term of years and so long thereafter as operated for oil and gas, all the oil and gas in and under the lands, and certain surface rights incident to the operations necessary to drill for and sell the oil and gas. The consideration for the leases was, that the lessees were to drill wells within a stipulated period of time and deliver to the lessors in pipe lines connected with the wells the one-eighth part of the oil produced and saved from the premises.

It is clear enough, and petitioner concedes that, under the facts stated, the landowner-lessors were taxable on the profits from their one-eighth part of the oil produced. Burton-Sutton Oil Co. v. Commr., 328 U.S. 25, 66 S.Ct. 861, 162 A.L. R. 827, 90 L.Ed. 1062; Burnet v. Harmel, 287 U.S. 103, 53 S.Ct. 74, 77 L.Ed. 199. This is true because the landowner-lessors retained what is now commonly called an "economic interest" in the oil in place, and this interest is measured by the one-eighth part of the oil to be delivered to them. This was the only medium through which the landowner-lessors could derive a profit. See Anderson v. Helvering, 310 U.S. 404, 409, 60 S.Ct. 952, 84 L.Ed. 1277. A pooling agreement was arrived at where-

by one-half of the royalty interests of each landowner-lessor was to be assigned and transferred through promoters and trustees to a corporation to be formed, and the consideration for such assignments and transfers was the common stock of the corporation to be issued proportionately to the landowner-lessors. The royalties paid on the interests thus pooled were to be collected by the corporation and ratably distributed to the stockholders as dividends. The promoters were to receive twenty-five percent of the stock of the corporation. The corporation, petitioner here, was organized in accordance with the pooling agreement, and on June 16, 1933, the trustees assigned to petitioner all of the royalty interests they had acquired and petitioner issued its stock certificates to the persons entitled thereto.

It is pertinent to inquire more particularly as to just what was assigned or transferred to petitioner through the trustees. The answer is found in paragraph 2 of the assignments, to wit:

"The first parties do hereby transfer, assign and set over to the said second parties, as trustees, all the right, title, interest, claim or demand of the first parties in and to all royalty interest in oil and/or gas now or hereafter discovered and/or produced from the real estate hereinbefore described, to the extent, however, of a one-half of the royalty interest of the first parties only, that is to say, to the extent of an undivided one-sixteenth interest in and to all the oil and/or gas produced from the aforesaid lands. * * *"

We have heretofore set forth the consideration for the assignments. From the viewpoint of the Federal income tax laws the validity of the assignments can-not be challenged. Blair v. Commr., 300 U.S. 5, 12, 57 S.Ct. 330, 81 L.Ed. 465; Edgar G. Swartz, Inc., v. Commr., 5 Cir., 69 F.2d 633. As in any ordinary contract, petitioner is entitled to the benefits of the assignments and transfers and is burdened with its obligations. A little more will follow touching the validity of the assignments as between petitioner and the landowner-lessors.

Certain of the landowner-lessors became dissatisfied and filed a bill of complaint in an appropriate Michigan court for a rescission of the pooling agreement on account of fraud and misrepresentation in the organization of the pool and a violation of the Blue Sky laws of Michigan in the organization of petitioner and the sale of its stock. The litigation lasted for eight years and during this period the oil roylties were impounded. The Supreme Court of Michigan decreed that there had been no fraud, that the sale of stock by petitioner did not violate the Blue Sky law and that petitioner was the owner of the pooled royalty interests and entitled to the royalty payments. The impounded and subsequent royalties were then paid to petitioner. There was certain other litigation in Michigan courts between petitioner and some of the landowner-lessors involving the rights of petitioner under the transfers and assignments. This litigation was never brought to a conclusion and we need not further refer to it except in connection with another feature of the case to be considered.

The Tax Court held that these royalty payments to petitioner constituted taxable income to it. The opinion of the Michigan Supreme Court, written by Judge McAllister, now a member of this court, is regarded as strongly persuasive but not altogether controlling here. We are dealing with a federal question which must be determined by federal law as interpreted by the Supreme Court [Palmer v. Bender, 287 U.S. 551, 557, 53 S.Ct. 225, 77 L.Ed. 489] and we are not required to accept local or common law as to the effect of the transfers or assignments to petitioner. It is not necessary that such assignments be in the nature of a deed or other instrument conveying title. We think that by virtue of the transfers and assignments the petitioner acquired an economic interest in the oil in place upon the profits of which (represented by royalty payments) it is taxable.

In Anderson v. Helvering, 310 U.S. 404, 409, 60 S.Ct. 952, 955, 84 L.Ed. 1277, it was said:

"The holder of a royalty interest—that is, a right to receive a specified percentage of all oil and gas produced during the term of the lease—is deemed to have 'an econom-

936

ic interest' in the oil in place which is depleted by severance. Palmer v. Bender, 287 U.S. 551, 557, 53 S.Ct. 225, 226, 77 L.Ed. 489; Murphy Oil Co. v. Burnet, 287 U.S. 299, 53 S.Ct. 161, 77 L.Ed. 318; Burnet v. Harmel, 287 U.S. 103, 53 S.Ct. 74, 77 L.Ed. 199."

■ If the petitioner is entitled to depletion on account of the oil pumped from the natural reservoirs, it would seem to follow that it should be charged with the profits as derived from such oil. The petitioner had an economic interest in all the oil, "now or hereafter discovered and/or produced from the real estate," because this oil was the source from which it derived its income and the income should be taxed to it. Corliss v. Bowers, 281 U.S. 376, 378, 50 S.Ct. 336, 74 L.Ed. 916; Helvering v. Horst, 311 U.S. 112, 115, 61 S.Ct. 144, 85 L.Ed. 75, 131 A.L.R. 655. There was no such anticipatory arrangement as in Lucas v. Earl, 281 U.S. 111, 50 S.Ct. 241, 74 L.Ed. 731 (heavily relied upon by petitioner), that would change the result. It was tersely stated in Blair v. Commr., supra page 12 of 300 U.S., page 333 of 57 S.Ct., 81 L.Ed. 465, that, "The one who is to receive the income as the owner of the beneficial interest is to pay the tax."

It is well to state here that we are dealing only with the one-sixteenth interest in the oil acquired by petitioner. The one-sixteenth interest retained by the land-owner-lessors, and the seven-eighths interest held by the operating lessees, is not involved.

■ Petitioner contends that the assignments and transfers constituted no more than an assignment of future income to the landowner-lessors, which when received would be taxable to the latter. We cannot accept this insistence in view of the clear-cut transfer to petitioner of the one-sixteenth royalty interest in and to all the oil produced. There is nothing in the transfers to give rise even to an inference that the landowner-lessors were retaining any ownership in the income produced from the interests which they had transferred. Founders General Corp. v. Hoey, 300 U.S. 268, 275, 57 S.Ct. 457, 81 L.Ed. 639.

■ Petitioner further contends, that it was simply the agent of the landowner-lessors, to collect the income. We think this contention is without merit. It finds no support in the agreements between the parties. It is in conflict with the generally accepted idea that a corporation is an entity and with the evidence in the case that it was acting in its own behalf. See Moline Properties v. Commr., 319 U.S. 436, 63 S.Ct. 1132, 87 L.Ed. 1499.

■ Finally, petitioner claims, as deductible, certain expenditures made by it in the nature of attorney's fees and costs. The Tax Court found as a fact that these expenses were incurred and paid in connection with the litigation in the Michigan courts,—that the Michigan litigation involved the question of petitioner's title to its royalty rights. There was substantial evidence to support this finding and we are not at liberty to overturn it. We think it follows as a matter of law that the Tax Court's denial of these expenses as deductible was correct. Sec. 19.24-2, Tr.Reg. 103, provides that the cost of defending or perfecting title to property constitutes a part of the cost of the property and is not deductible expense. This Regulation has the effect of law. See Jones' Estate v. Commr., 5 Cir., 127 F.2d 231; also Farmer et al. v. Commr., 10 Cir., 126 F.2d 542, and Bowers v. Lumpkin, 4 Cir., 140 F.2d 927, 151 A.L.R. 1336.

The decision of the Tax Court is affirmed.