**LEHIGH PORTLAND CEMENT COMPANY**

v.

**UNITED STATES of America.**

Civ. A. No. CA 76–738.

United States District Court, E. D. Pennsylvania.

June 27, 1977.

Jack B. Justice, Philadelphia, Pa., for plaintiff.

David W. Marston, U. S. Atty., Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

TROUTMAN, District Judge.

Plaintiff is seeking, pursuant to 28 U.S.C. § 1346(a), to recover $1,550,000.00 in federal income taxes. The facts are not in dispute. Plaintiff is engaged in the business of mining calcium carbonates from property it owns and using said materials in the manufacture of Portland cements. On December 31, 1963, plaintiff conveyed to BMAL Corporation (BMAL) three separate Calcium Carbonate Production Payments (the Payments) for the amounts of $1,000,000.00, $1,200,000.00 and $900,000.00, respectively and BMAL in turn paid plaintiff a sum of $3,100,000.00. BMAL thus acquired the right to receive a portion of the proceeds of the mining of calcium carbonates from specific properties. In particular, the first Payment was payable out of 90% of the proceeds from calcium carbonates mined in Alsen, New York; the second Payment was payable out of 90% of the proceeds from calcium carbonates mined in Bunnell, Florida; and the third Payment was payable out of 90% of the proceeds from calcium carbonates mined in Miami, Florida. BMAL and the plaintiff further agreed that if the mining or manufacturing activities at any of the properties ceased for one year, the Payment dependent on said operations would be terminated and its primary amount added pro rata to the amount outstanding on the remaining payments.

Plaintiff treated the cash payments it received from BMAL as ordinary income of $3,100,000.00 for tax year 1963, and excluded as income in tax year 1964 the approximately $3,100,000.00 used to discharge the Payments. In so doing, plaintiff assumed that an economic interest in specific unmined calcium carbonates had been conveyed to BMAL, which, if true, would render the $3,100,000.00 paid by BMAL to plaintiff ordinary income to plaintiff in 1963 and the approximately $3,100,000.00 attributable to the actual production of the mineral income to BMAL in 1964.

The Internal Revenue Service District Director (the Director) disagreed, holding that the money paid by BMAL to plaintiff in 1963 was a loan and that no economic interest had been conveyed to BMAL. As a result, the money attributable to production of the mineral was ruled to be income to plaintiff in 1964. The Director therefore assessed plaintiff for increased tax in 1964 totaling $1,550,000.00, less a 1963 refund of $759,318.63. Plaintiff paid the balance due and filed a refund claim with the Director. The Director took no action on the claim, and pursuant to 28 U.S.C. § 1346(a) plaintiff commenced this action.

With no facts in dispute, both sides move for summary judgment. Plaintiff contends that it conveyed an economic interest to BMAL in 1963, realizing income in that

year. Defendant disagrees, arguing that BMAL was not solely dependent upon the production of any given mining property for the discharge of its corresponding Payment, since it was provided that if such production ceased, the Payment would be terminated and its balance added to the other Payments. Because of this provision, defendant argues that the Payments are invalid as assigned economic interests.

The test to determine who possesses an economic interest, and is thus taxable on mineral production subject to depletion allowances set forth in the Internal Revenue Code of 1954[1] (the Code), is set forth in *Palmer v. Bender*, 287 U.S. 551, 557, 53 S.Ct. 225, 226, 77 L.Ed. 489:

> "* * * The language of the statute is broad enough to provide, at least, for every case in which the taxpayer has acquired, by investment, any interest in the * * * (mineral) in place, and secures, by any form of legal relationship, income derived from the extraction of the * * * (mineral), to which he must look for a return of his capital."

It was further held in *Anderson v. Helvering*, 310 U.S. 404, 408, 60 S.Ct. 952, 954, 84 L.Ed. 1277 (1940):

> "The sole owner and operator of * * (mineral) properties clearly has a capital investment in the * * * (mineral) in place, if anyone has, and so is taxable on the gross proceeds of production and is granted a deduction from gross income as compensation for the consumption of his capital. * * * By an outright sale of his interest for cash, such an owner converts the form of his capital investment, severs his connection with the production of * * * (the mineral) and the income derived from the production, and thus renders inapplicable to his situation the reasons for the depletion allowance. * * *"

A taxpayer who makes such a transfer, in addition to severing his interest in the mineral production, converts future income into present income and thus realizes ordinary income at the time of the conveyance. *Commissioner of Internal Revenue v. P. G. Lake, Inc.*, 356 U.S. 260, 78 S.Ct. 691, 2 L.Ed.2d 743 (1958).

In the instant case, it is clear that BMAL had an interest in the extraction of calcium carbonates, in accord with the first provision of the *Palmer* test. The disagreement is whether BMAL could look *only* to the burdened property, in accord with the second *Palmer* provision. Defendant argues that BMAL's ability to look to any two of the properties for pro rata satisfaction of the balance of the Payment related to the third property, if activity ceased on the third property, provided BMAL with an alternate source of satisfaction for all three investments, and thus all three Payments were invalidated as transfers of economic interests.

Plaintiff contests this assertion for two reasons. First, it argues that BMAL's contingent right to look to any two properties for income if the third failed was a contingency that was never realized. It is undisputed that production at all three sites continued uninterrupted until BMAL received the payments to which it looked for a return of its capital. Also, it argues that there is no real alternate source of satisfaction in this case because BMAL could look only to minerals from mineral-producing lands, regardless of what contingency occurred.

There are many cases in which contingencies providing for alternate sources of satisfaction never occurred, but the alternate sources invalidated the production payments as transfers of economic interests. In *Christie v. United States*, 436 F.2d 1216 (5th Cir. 1971) the assignee of the production payment could look to the sale of salvage equipment to recoup his investment. It was argued that at the time of the transfer it was well known that this contingency would almost certainly never occur. Nonetheless, the Court held that the

---

1. The Tax Reform Act of 1969, which, in part, holds that production payments are to be treated as loans and not economic interests, subject to certain exceptions, does not apply in this case because, of course, the tax years involved, 1963 and 1964, predate that Act.

642

transferor retained, and did not convey, an economic interest. In *Commissioner of Internal Revenue v. Estate of Donnell*, 417 F.2d 106 (5th Cir. 1969), the purchaser of a production payment received a personal guarantee from another party that he would purchase the unliquidated balance of the production payment. Such a purchase was never requested. However, the Court held that the purchaser did not have an economic interest. And in *Anderson v. Helvering, supra*, the holder of a production payment also had the right to proceeds from sale of fee title to any or all land conveyed. The record did not indicate how much of the income was from oil and gas production and "what portion, if any, was derived from sales of fees", *Id.*, 310 U.S. at 406, 60 S.Ct. at 953, n. 3. Without any proof that the contingency had occurred, the Court held that the right of the production payment holder to look to sales of fees prevented him from possessing an economic interest. The law in these cases is quite clear. If there is a contingency in the production payment transfer in which the transferee may under certain conditions look to an alternate source of satisfaction, that transfer does not convey an economic interest even if the contingency never occurs.

Plaintiff's other argument is that it could only look to a mineral source to recoup its investment, and this is not a true alternate source in the *Anderson* sense. The applicable statutes are 26 U.S.C. § 611 *et seq.*, dealing with natural resources. Section 611(a) of the Code creates a depletion allowance in computing income in the case of natural mineral deposits. Section 612 permits cost depletion of depletable "property" and Section 613 permits a percentage depletion allowance if it is greater than the cost depletion. This allowance is a percentage of the "gross income from property" which is limited in Section 613(c) of the Code to income from mining. The term "property" as it is used in Sections 612 and 613 is defined in Section 614(a) as "each separate interest owned by the taxpayer in each mineral deposit in each separate tract or parcel of land."

Plaintiff contends that BMAL could look only to mineral assets as sources of satisfaction for its investment. Defendant maintains that minerals from one parcel of land are an alternate source for minerals from another nonadjacent parcel of land. Treasury Regulation on Income Tax (Regulation) § 1.614–1(a)(2) defines "interest", as it is used in Code § 614(a), as "an economic interest in a mineral deposit". Regulation § 1.611–1(b)(1) explains that "An economic interest is possessed in every case in which the taxpayer has acquired by investment any interest in mineral in place * * * and secures, by any form of legal relationship, income derived from the extraction of the mineral * * *." Regulation § 1.611–1(d)(1) further defines "property" to mean "(i) in the case of minerals, each separate economic interest owned in each mineral deposit in each separate tract or parcel of land or an aggregation or combination of such mineral interests permitted under Section 614(b) and (c), (d) or (e) * * *".

The language of these provisions is clear. Plaintiff only conveyed an economic interest to BMAL if all the minerals were on adjacent lands or in a permissible aggregation of land. Regulation § 1.1614–1(a)(2) notes that the term "interest" includes production payments. Therefore, if the production payments in the instant case come within a permissible aggregation, then an economic interest could be existent in the minerals of *all* the tracts of land (which, by the facts stated earlier, clearly were not contiguous), and the minerals of each tract could be a source of satisfaction for any Payment relating to any tract.

The code defines all mineral interests as either operating mineral interests or nonoperating mineral interests. 26 U.S.C. §§ 614(d) and 614(e). Regulation § 1.614–2(b), in defining operating mineral interests, notes that "The term does not include royalty interests or similar interests, such as production payments * * *". Therefore, the production payments in the instant case were nonoperating mineral interests, as defined by Section 614(e). Regulation

§ 1.614–5(d) deals with aggregation of nonoperating mineral interests, and provides that "In no event may nonoperating mineral interests in tracts or parcels of land which are not adjacent be aggregated and treated as one property".

Thus, plaintiff's properties could not be aggregated and plaintiff could not convey to BMAL one economic interest in all the minerals in the three properties. The only permissible conveyance of a bona fide economic interest would have been to convey separate economic interests in each property. However, that has not been done in the instant case because the transferee could look to production from other properties for satisfaction of any given Payment.

Plaintiff cites *J. Bryant Kasey,* 33 T.C. 656 (1960) as support of its argument that production payments to be satisfied out of gross income from the mining of specified mineral properties are valid economic interests even if alternate or multiple properties are involved. This case does not support that argument. It involved several properties, but never considered the permissibility of aggregation. It could be that all concerned parcels of land were contiguous in that case, which would mean that aggregation would be proper under Section 614(e) of the Code, which permits aggregation of nonoperating mineral interests in adjacent tracts or parcels of land. The *Kasey* decision did not consider aggregation issues such as are here involved and, therefore, cannot be considered authority for the proposition that nonoperating mineral interests such as production payments in nonadjacent tracts of land can be aggregated.

Plaintiff also cites *McAfee v. U. S.,* 431 F.2d 1360 (10th Cir. 1970). *McAfee* dealt with a production payment for the sale of "oil and gas leases", but there was no indication anywhere in the opinion that the leases were on nonadjacent tracts of land or even on more than one tract of land. Also, the aggregation issue was never considered. That opinion is equally inapposite as support for the contention that nonoperating mineral interests such as production payments in nonadjacent properties may be aggregated.

Finally, plaintiff cites *Estate of Weinert v. Commissioner of Internal Revenue,* 294 F.2d 750 (5th Cir. 1961) as support for its contention that a production payment is an economic interest despite the presence of an alternate source of payment if the taxpayer had to look solely to the production of minerals to recoup capital invested. In that case, only one property was involved and the alternate source was a processing plant to be built to process oil and gas from the lease. That case is clearly inapposite to the matter at hand, because in the instant case we are concerned with aggregation of multiple properties which are not contiguous.

We therefore conclude that under the applicable statutory and regulatory provisions plaintiff could not transfer an aggregated economic interest in its nonadjacent mining properties. As a result, plaintiff retained the economic interest and the money paid to plaintiff by BMAL in 1963 was a loan, not ordinary income in that year. Accordingly, plaintiff's motion for summary judgment will be denied and defendant's motion for summary judgment will be granted.