United States Court of Appeals,

Fifth Circuit.

No. 97-60265

Summary Calendar.

Mary K. HERBEL and Stephen R. Herbel, Petitioners-Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.

Carolyn M. WEBB and Jerry R. Webb, Petitioners-Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.

Dec. 8, 1997.

Appeal from the Decision of the United States Tax Court.

Before DUHÉ, DeMOSS and DENNIS, Circuit Judges.

DUHÉ, Circuit Judge:

Taxpayers appeal the Tax Court's decision that payments received in settlement of a "take or pay" contract dispute are not "production payments" under 26 U.S.C. § 636(a). We affirm.

I

In February 1988, the Webbs and the Herbels (collectively,"Appellants") formed Malibu Petroleum, Inc. to explore for and produce oil and natural gas. The Webbs owned 90% and the Herbels owned 10%. Appellants chose to treat Malibu as an "S" corporation for federal tax purposes.[1] Shortly after

---

[1]An S Corporation is a corporation that elects to be treated under Subchapter S of the Internal Revenue Code. The election allows the corporation to pay no income tax. Instead, the income or loss is passed to the shareholders who report their pro rata shares on their individual tax returns. *See* I.R.C. § 1362 et seq.

incorporation, Malibu acquired an interest in gas wells covered by a take-or-pay contract[2] with Arkansas Louisiana Gas Co. ("Arkla"). Later Malibu claimed that Arkla owed Malibu over two million dollars for failing to take or pay for a minimum quantity of gas. Arkla disputed its liability. Arkla and Malibu settled their dispute by an agreement which provided that Arkla would prepay $1.85 million for natural gas. In return, fifty percent of the natural gas thereafter delivered to Arkla would be considered recoupment gas and received without further cost. Arkla would be entitled to a cash refund of the remaining prepayment balance if Malibu ended the contract or the contract wells substantially depleted before recoupment of the prepayment. After receiving the $1.85 million, Malibu lent $823,263 to Webb and $112,000 to Herbel. Malibu treated the prepayment as a loan and did not include it as gross income on its 1988 tax return. Upon audit, the Internal Revenue Service ("IRS") concluded that the prepayment should have been treated not as a loan but as an item of gross income.

Appellants separately petitioned the Tax Court for a redetermination of tax liability, and the court consolidated the cases. Appellants moved for summary judgment arguing that the prepayment was a loan from Arkla. Alternatively, the prepayment was a production payment under 26 U.S.C. § 636 and so must be treated as a loan. The court denied Appellants' motion and held

---

[2]Arkla agreed to pay for a specified amount of natural gas even if it did not take delivery.

that prepayment was not a traditional loan or a production payment within § 636.  The court held that the Treasury Regulation § 1.636-3(a)(1) required a production payment to be an economic interest, and Arkla had no such interest.  Appellants countered that the regulation was invalid.  The Tax Court rejected this argument after examining the law preceding and the legislative history surrounding § 636.  Thus, Malibu was required to include the prepayment as income for the year it was received and appellants were required to report as income their proportionate shares of the prepayment.

Appellants contend on appeal that the Tax Court erred as a matter of law in holding that Treasury Regulation § 1.636-3(a)(1) is valid and in holding that the prepayment was not a "production payment" within 26 U.S.C. § 636(a).

II

A. STANDARD OF REVIEW

Whether a Treasury regulation is valid is a question of law subject to *de novo* review.  *Tate & Lyle, Inc. v. Commissioner,* 87 F.3d 99, 102 (3rd Cir.1996).

B. ANALYSIS

A production payment is:

"[A] right to a specified share or production from a mineral property (or a sum of money in place of production) when that production occurs.  The production payment is secured by an interest in the minerals, the right to the production is for a period of time shorter than the expected life of the property, and the production payment usually bears interest." *Carr Staley, Inc. v. U.S.,* 496 F.2d 1366, 1367 (5th Cir.1974) (internal citations and quotation marks omitted).

There are two types of production payments:  carved out and retained.  A carved out production payment is created when the

3

owner of mineral property sells a portion of his future production. A retained production payment is created when the owner of a mineral interest sells the working interest but reserves a production payment for himself. The Appellants argue that the gas allocated to Arkla in the settlement was a carved out production payment because Arkla would receive 50% of all future gas production. Thus, under § 636(a), the production payment should be treated for tax purposes as if it were a mortgage loan on the property. *See* 26 U.S.C. § 636(a) (1969).

The IRS argues that the recoupment cannot be a production payment because the right to a specified share of production means that there is an economic interest in the mineral in place. 26 CFR § 1.636-39(a)(1). The Supreme Court in *Anderson v. Helvering,* 310 U.S. 404, 60 S.Ct. 952, 84 L.Ed. 1277 (1940), held that for there to be an economic interest, the money must derive solely from mineral production. *Id.* at 412-13, 60 S.Ct. at 956-57. Thus, where, as here, the payment is guaranteed by something in addition to production (Arkla's right to cash reimbursement) the payment is not a production payment and does not fall within § 636.

The Appellants respond that Congress did not intend to limit § 636(a) to cases where there were economic interests in the minerals. Rather, § 636 treats all guaranteed mineral production transactions as loans.

To resolve the issue, we must first examine briefly the law before and the legislative history surrounding the adoption of § 636. The first important case involving the tax consequences of

4

production payments is *Thomas v. Perkins,* 301 U.S. 655, 57 S.Ct. 911, 81 L.Ed. 1324 (1937).  There, an assignor transferred to Perkins an oil and gas lease in exchange for which the assignor received a sum of cash and reserved a payment of $395,000.  The latter sum was to be paid solely out of 25% of oil produced, and Perkins was in no way personally obligated.  At issue was whether Perkins or the assignor had to report the $395,000 as income.  The Supreme Court held that the production payment should be taxed to the assignor.

The Supreme Court later held, though, in *Anderson v. Helvering,* 310 U.S. 404, 60 S.Ct. 952, 84 L.Ed. 1277 (1940) that not all financing arrangements that called for payments to be made out of mineral production were economic interests.  *Id.* While the facts were similar to those in *Perkins,* the Court found it significant that the assignor's payment was guaranteed not only out of oil production but also by a lien on the fee interest in the property.  Because the holder of the payment did not have to rely solely on mineral production for payment, the holder did not have an economic interest in the minerals.  As a result, the assignee would be taxed on the full amount of production including the portion the assignor reserved.

Because these two cases treated payments differently based on whether they qualified as economic interests, taxpayers began to treat the sale or exchange of a production payment as the equivalent of the sale or exchange of a capital asset.  Taxpayers saw that they could convert otherwise ordinary income into a

5

capital gain by selling a series of short term production payments. The Supreme Court, in *Commissioner v. P.G. Lake,* 356 U.S. 260, 78 S.Ct. 691, 2 L.Ed.2d 743 (1958), however, held that ordinary income could not be converted into a capital gain by selling a short term production payment for a lump sum.  According to the Court, "[t]he lump sum consideration seem[ed] essentially a substitute for what would otherwise be received at a future time as ordinary income[.]" *Id.* at 265, 78 S.Ct. at 694.

While *P.G. Lake* closed one area of potential abuse, taxpayers then developed two methods for exploiting the use of production payments.  First, with carved out production payments, taxpayers began to manipulate the timing of the income by accelerating income to avoid the 50% limitation on taxable income from property limit for percentage depletion purposes, the foreign tax credit, the five year net operation loss carryover limit, and the seven year investment credit carryover.  S. REP. NO. 91-552 at 182 (1969). The second abuse was commonly known as the ABC transaction[3] and allowed a borrower in a retained production payment from the sale of oil and gas property to pay off a loan with tax-free dollars

---

[3]In a ABC transaction, A is the owner of the working interest in the property.  A then conveys the working interest to B for cash and retains a production payment for most of the purchase price. A sells the payment to C, a bank.  Because the payment represents A's entire interest in the property, he realizes a capital gain on the sale.  *P.G. Lake* does not apply because A did not transfer a production payment carved out of a larger interest.  The transaction had the same economic result for A if B had borrowed the purchase price for the entire property, but the transaction was more beneficial to B than a traditional loan.  B could repay a loan with pre-tax dollars because the production payment C held was treated as an economic interest in the minerals and not included in B's gross income.  S. REP. NO. 91-552 at 183-84 (1969).

while a borrower in any other industry had to satisfy the loan with post-tax dollars.  S. REP. NO. 91-552 at 184 (1969).  Congress added § 636 to the Internal Revenue Code through the Tax Reform Act of 1969, Pub.L. 91-172, § 503(a), 83 Stat. 487, 630 to remedy this situation.  *See generally* S.REP. NO. 91-552 (1969), H.R. REP. NO. 91-413 (1969).  Section 636 stated that carved out and retained production payments would be treated as loans and would no longer qualify as economic interest in mineral property.

Considering the legislative and previous case history, we hold that Treasury Regulation § 1.636-3(a)(1) is valid and that Arkla's prepayment does not fall within § 636.  Appellants argue that the Treasury Regulation is invalid because it limits production payments to those payments that are derived solely from production.  They state that Congress intended any carve out to be treated as a loan and cite the Senate Finance Committee's recommendation which states that a carve out production payment which "is in any manner guaranteed by the person who created it" should be treated as a loan.  Appellants argue that "any manner guaranteed" means that the payment is not limited to economic interest but includes payments guaranteed by liens, cash payments, etc.

In light of the previous history, however, we reject this argument.  The tax abuse that Congress sought to prevent occurred only if the right to payment constituted an economic interest.  If the transaction did not involve an economic interest, then the mineral property owner would continue to be taxed on the income derived from the mineral property without regard to the

7

transaction. *Christie v. United States,* 436 F.2d 1216 (5th Cir.1971). The tax court found (and Appellants do not challenge this finding) that Arkla had no economic interest in the contract wells; therefore, we affirm the tax court's holding that Treasury Regulation § 1.636-3(a)(1) is valid and that Arkla's prepayment does not fall within 26 U.S.C. § 636(a).

## CONCLUSION

For the foregoing reasons, we AFFIRM.